Tompkins, J,,
delivered the opinion of the Court.
At the November term of the St. Louis County Court for the year 1833, certain papers were filed, in that Court, purporting to be copies of the will, &c., of John *355 Mullanphy, deceased. John O’Fallon, the defendant in error, claiming to he the executor of said Mullanphy, offered to prove that the papers above mentioned were a copy of the last will and testament of said deceased; and also offered to prove that the original will and testament was [were] duly executed by said Mullanphy in his life time in pursuance of law; that the said original will and testament was [were] in existence since the death of said Mullanphy; and that it had been since his death either lost or destroyed, and that it cannot be produced 5 and further offered to prove that the paper produced is a true copy of said original will and testament. To the taking of this proof, and the jurisdiction of the Court in taking probate of such last will and testament in the manner aforesaid, James Clemens and Eliza his wife, Richard Graham and Catharine his wife, William Harney and Mary his wife, which said Eliza, Catharine and Mary are some of the heirs at law of the said Mullanphy, objected; and the County Court sustaining their objection, rejected the evidence offered. From this decision of the County Court, O’Fallon appealed to the Circuit Court, and that Court having reversed the decision of the County Court, Graham, Clemens, Harney, &c., sued out a writ of error to this Court, believing that the proper mode of proceeding in tbis case is by writ of mandamus from the Circuit Court to the County Court, commanding it to admit the proof or show cause; we will, nevertheless, as the cause is before us, and as it is important that a final decision should be had in as short a time as is consistent with a correct administration of justice, take it into consideration. The assignment of errors being general, we will consider only whether the evidence has been properly rejected. The plaintiffs in error contend that the County Court can grant probate only of the original executed by the deceased, and not of a copy. They rely on the 5th, 6th, 8th and 10th sections of the act concerning wills. Those sections all are framed with a view to direct the Courts how to proceed in the proving of wills which may be exhibited in Court. The 8th section provides that in certain cases the Court or its Clerk may issue a commission annexed to a will, and direct it, to any Judge or Justice of the Peace, &e., empowering him to take and certify the attestation of the witnesses to such will. The 10th section requires that when any will shall be exhibited to be proved, the Court or Clerk having jurisdiction thereof, shall receive proof thereof, and grant a certificate of probate, &c., thence it is inferred that the statute only intended to confer this jurisdiction on the County Court in cases where the original was produced, see Revised Code, pp. 791-2. On the other hand, the counsel for the defendant contend that the act of 1825, concerning Courts, gives to the Probate Courts a general jurisdiction in all cases relative to the probate of last wills and testaments; and that the act concerning wills, does not restrain that jurisdiction, and rely on the 3d section of the same act, (see Rev Code, p. 790,) which, they say, shows that the Legislature in passing that act, had in their mind the case of destroyed wills. And they add, that the act of 2d January, 1827, to amend the act to establish Courts of justice, &c., transfers to the County Courts all the power before possessed by the Probate Courts, (see 3d section, p. 19, of the acts of 1826-7.)
The 6th section of the act of 1825 above mentioned, and to which the counsel of the defendant in error refer, gives to the several Courts of Probate exclusive original jurisdiction in all cases relative to the probate of last wills and testaments, the granting of letters testamentary and of administration, and the repealing of the same, &c. The act concerning last wills and testaments seems to have been made, partly with a view to direct the Court of Probate how to proceed in some of its duties. The 8th *356 section gives to that Court the power to issue a commission annexed to the will, to certain judicial officers, to take and certify the attestation of such witnesses as may be prevented by sickness from attending, or may reside out of the State, &c. The 10th section directs the Court or Clerk how to proceed, when a will is presented and witnesses are at hand. As the most ingenious and able lawyer would find it a difficult task to foresee every difficulty or doubt that might arise in the discharge of the duties of Probate Courts, the Legislature seems to have contented itself with providing for those cases which appear to have presented the greatest difficulty, and to have left them to seek aid in the common law rules of proceeding, in the discharge of the ordinary duties imposed on them by the 6th section of the act of 1825 above cited.
The act of 1827, in amendment of the last cited act, transfers to the County Courts in terms, all the jurisdiction which the act of 1825 had given to the Probate Courts, and which the act concerning last wills and testaments does not seem intended to restrain. The County Courts then being in possession of exclusive original jurisdiction in all cases relating to the probate of last wills and testaments, and in our opinion unrestrained by any provision in the act concerning last wills and testaments, (see p. 19 of acts of 1827, section 3,) it remains to be seen whether, by the known rules of evidence, the original will being lost, inferior evidence may be received. The statute requires that the last will and testament shall be signed by the testator, or by some person in bis presence by his direction, and be attested by two or more competent witnesses subscribing their names in the presenee of the testator. The best evidence the nature of the case will admit of must be produced. (Peake's. Evi.)
If it appears that better evidence might have been brought forward, the very circumstance of its being withheld furnishes a suspicion that it would have prejudiced the party in whose power it is, had he produced it. Thus, if a written contract be in existence and in the custody of the party, no parol testimony can be received of its contents. In some cases, (Peake’s Evi. 30,) when it has been clearly shown that a record once existed, which has been since destroyed, much inferior evidence of its contents has been admitted. The same author, at page 67, says, “ we have seen that even a judgment, when destroyed, may be proved by secondary evidence. This rule applies universally to every species of evidence.” The admission of secondary evidence does not dispense with any of the provisions required by the statute to give solemnity to the instrument sought to be established as a last will and testament. After its existence has been proved and its subsequent loss, then it must equally be proved that it was subscribed by the testator, and that the two witnesses each subscribed it in his presence.
One. of these witnesses will be enough to establish the due execution of the will if he can prove that he saw the other witnoss subscribe it in the testator’s presence. For the law, which requires the best evidence, does not require all the evidence which might he given, (Peake 9.) If then, the contents of so solemn an instrument as a record can be proved by inferior evidence, the loss of the record being first proved, why not the contents of a lost will and testament of a dead man?
The original will itself, even after probate, is evidence of inferior character to the record of a Court. In the absence of authority, we might be content with this demonstration of the soundness of the rule, that would let in inferior evidence to-prove the contents of the lost will; but we are not without authority. The following authorities furnished by the counsel for the defendant in error are very appropri *357 ate, Toller on Ex’ors., p. 14. If a will be destroyed during the life time of the testator, it will be substantiated upon satisfactory proof thereof, and of its contents, (see case there cited.)
Again, the same author at page 71 says, if tiie will be lost, and two witnesses superior to all exception, who read the will, prove its existence after his death, remember its contents and depose to its tenor,-are sufficient to-establish it, so where the testator had delivered his will to a friend to keep for him, and four years afterwards died, when the will was found gnawn to pieces by rats, and in part illegible,-on proof-of the substance of the will by joining the pieces, and'the memory of witnesses, the probate was granted. In the case before the Court, much better evidence of the con-t’ents of the will was offered than was admitted in the cases above cited. It was a copy of the will of Mullanphy. The memory of man is weak; whereas, the copy is as unchangeable as the original. The Kentucky books also furnish us authorities, of which one only will be produced. "In the case of Happy’s will, 4 Bibb. 553, it was decided that probate may be granted of a copy of a will when the original cannot be produced. The Judge who delivered the opinion (Owsley) says it'is objected that probate cannot be granted by the County Court on a copy; but that the only appropriate remedy is by bill in equity. We are unable to perceive any force in this objection. The case of a lost will is no where excepted in the statute from the jurisdiction given to the County Courts in testamentary matters; and, upon principle, we do not suppose such a case should form an exception. In deciding (continues the Kentucky case) whether probate ought or ought not to be granted, the County Court, it is true, ought to require the original will to be produced, if it is to be had;: not however because it is necessary to gtve them jurisdiction of the matter, but in obedience to the law requiring the best evidence the nature of the case is susceptible of; but if the original is not to be had, then a copy constitutes the best evidence in the power of the party, and upon its production, under the influence of the same rule, the Court ought to proceed either to grant or refuse probate.” It cannot have escaped the most superficial observer, that there is a very remarkable resemblance between the case of Happy’s will and that of Mullanphy’s now before us ;'so strong indeed is this resemblance, that the Court of Appeals in Kentucky, in deciding the case of Happy’s will, may be said virtually to have decided that of Mullanphy’s. And that Court was so far from thinking the case a difficult one, that it appears to have been surprised that any doubt concerning the jurisdiction of the County Court should have arisen. 'We cannot but concur with them in opinion, (see 4 Monroe 422, to the same purpose:) The judgment of the Circuit Court is, therefore, affirmed,.