GENEVA HARRELL, Appellant, v. ALBERT HAR-RELL et al.

Division Two, July 19, 1920.

1. **WILL: Attestation: Denial of Witnesses.** Testimony by attestation witnesses that they did not subscribe their names to the will as Witnesses is not conclusive that they did not subscribe it; but there being positive testimony by other persons that they did subscribe it, the question becomes one of fact for the jury.

2. ———: **Lost or Destroyed.** A will which has been lost or destroyed may be established by secondary evidence showing (a) its contents and (b) that it was subscribed by the testator and two or more witnesses in his presence. And the testimony of one of such witnesses is enough to establish the due execution of the will if he testifies that he saw the other witness subscribe it in the testator's presence.

3. ———: **Proof of Execution: Competency of Witness.** The husband who has only curtesy initiate in land devised to his wife is not incompetent to testify to the formal execution of the will.

4. ———: ———: ———: **Proof of Finding Will.** Testimony by the husband of a devisee that a paper appearing to be the will of decedent was found among his papers after his death did not go to prove the formal execution of the will; and, though he were incompetent because of his interest to testify to its formal execution, he is not incompetent to testify that such an instrument was found among testator's papers.

5. ———: ———: ———: **Cross-Examination: Testimony Developed On.** Testimony developed by appellants on cross-examination of the husband of a devisee that he was acquainted with the signature of one of the alleged witnesses to the will and believed that the name on the paper was in his handwriting, although it went to the formal proof of the instrument, is a matter of which they cannot complain.

6. ———: **Contest: Jurisdiction: Derivative Power of Circuit Court: Lost Wills and Copy.** Exclusive original jurisdiction of the proof of wills is given to the probate court, and jurisdiction of the circuit court to establish or annul a will is secondary and derivative. But where a paper claimed to be a lost will has been established in the probate court as the will of the testator, or rejected as his will,

Harrell v. Harrell.

a proceeding may be instituted in the circuit court either to es-- tablish or reject it. So that where plaintiffs allege that on a certain date there was admitted to probate the last will of a certain decedent, which was not signed by him, nor declared by him in the presence of two subscribing witnesses to be his will, and was therefore void, and praying that the said pretended will be adjudged to be void; and the defendants answer that in the same year there was filed in the probate court a prior will duly executed by said decedent, properly witnessed by three persons in his presence, and before being probated was destroyed, but after appropriate proceedings in the probate court was established as his will, the circuit court has jurisdiction to establish said prior will so established in the probate court as decedent's last will.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Creech & Penn* and *John L. Burns* for appellant.

(1) The statutes require that a valid and effective will must be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator. R. S. 1909, sec. 537; McGhee v. Porter, 14 Mo. 611; Cowan v. Shaver, 197 Mo. 203. (2) Likewise the statutes provided how a will shall be proved by the witnesses, if living and present, by the probate court or the clerk or judge in vacation (R. S. 1909, sec. 547); if any witness is absent, residing without the United States or out of this State or more than forty miles from the place where the will is to be proved, or if the witness is prevented by sickness from attending court, a commission is to be issued to some officer empowering him to take the attestation of such witness (R. S. 1909, sec. 550); if one witness is examined and the other witnesses are dead, insane or their residences unknown, then proof of the testator's and absent witnesses' handwriting shall be taken (R. S. 1909, sec. 552); if all the subscribing witnesses are dead, insane or their residences unknown, the handwriting of the testator and subscribing witness shall be proved (R. S. 1909, sec. 553). These provisions of the statute indicate that it was the intention of the

Legislature that the testimony of at least two subscribing witnesses, if their testimony was procurable, should testify to the execution of the will.  (3) It has been the policy of our courts to require, in conformity with the statute, that at least two subscribing witnesses must be called to establish a will.  Bell v. Smith, 197 S. W. 129; Berst v. Moxam, 157 Mo. App. 342; Craig v. Craig, 156 Mo. 362; Odenwaelder v. Schorr, 8 Mo. App. 464.  (4) The requirements of the statute are mandatory.  McGee v. Porter, 14 Mo. 611; St. Louis v. Williams, 21 Mo. 17; Northcutt v. Northcutt, 20 Mo. 266; Catlett v. Catlett, 55 Mo. 330; Avaro v. Avaro, 235 Mo. 424.  (5) The burden is on the proponents, and does not shift, but remains on them throughout the trial.  Norton v. Paxton, 110 Mo. 462; Carl v. Gabel, 120 Mo. 295; Craig v. Craig, 156 Mo. 362; Maddox v. Maddox, 114 Mo. 46; Goodfellow v. Shannon, 278 Mo. 278; Benoist v. Murrin, 58 Mo. 322; Lareau v. Lareau, 208 S. W. 243.  (6) The beneficiaries under a will are not competent witnesses to prove the execution of a will.  Miltenberger v. Miltenberger, 78 Mo. 31; Mann v. Balfour, 187 Mo. 303; Odenwaelder v. Schorr, 8 Mo. App. 466.  (7) Elmer Creech was a beneficiary under the will, by reason of being the husband of Jennie Creech; she having three children, Dollie, Jessie Belle and Edna, by him, he was entitled to curtesy in the land devised to his wife.  Being thus situated he was an incompetent witness to establish the execution of the will and the court erred in admitting his testimony over the objection of contestants.  Roberts v. Bartlett, 190 Mo. 703.  (8) The court was in error when it received the testimony as to the contents of a lost will, before it had been shown by the evidence that a will had been formally executed, and that it was unrevoked at the death of the testator.  Hamilton v. Crowe, 175 Mo. 641.  Contestant Geneva Harrell filed her petition in this cause to contest a will that had been established by the probate court of Lincoln County, on the ground that said will had not been executed according to law.  The separate answer of Edward

Harrell, Sydney Harrell and Jennie Creech admitted that the probate court had probated the will set out in plaintiff's petition; denied that the will admitted to probate was not executed in due form of law, then follows a recital of the proceedings had in the probate court, in which they set out the will propounded by them in the probate court; alleged that James Harrell was over the age of twenty-one years and of sound and disposing memory, that "said lost will as aforesaid" was in writing and attested by two or more competent witnesses, and then follows the prayer, praying that "said lost will" be established by the court. Under these pleadings the court admitted evidence on the part of proponents to establish a lost or destroyed will. Contestants contend that the only will in question under the pleadings was the will admitted to probate by the probate court, and /that by the admission of evidence as to a lost will the court broadened the issue made by the pleadings; undertook to establish another and different will to that pleaded by plaintiff and assumed original jurisdiction to probate a will for James Harrell. (a) It is error to admit evidence that will make an issue not raised by the pleadings. Chitty v. Railroad, 148 Mo. 74. (b) The will in contest had been admitted to probate; it was the only will in contest, and the court was without jurisdiction to establish another or different will. The proponents had secured the probate of the will and had taken no action to have the findings of the probate court reviewed, and did not in their answer to plaintiff's petition seek a review of the probate proceedings. (c) The original jurisdiction to establish a will lies in the probate court, and the court, by hearing evidence as to the lost will, assumed original jurisdiction to establish a will for James Harrell, when the probate court had already probated a will, and by that judgment rejected the will which proponents were permitted to adduce evidence to sustain in this case. Banks v. Banks, 65 Mo. 436.

*Sutton & Huston* and *Avery & Killam* for respondents.

(1) The error assigned by appellants that the court erred in admitting the testimony of Elmer Creech, Jennie Creech and Edward Harrell, legatees or interested parties, to prove the execution of the will is not tenable for the reason that said witnesses were rendered competent by the taking of their depositions by the opposite party, to-wit, the appellant in this case. Tomlinson v. Ellison, 104 Mo. 105; Stone v. Hunt, 114 Mo. 66; Ess v. Griffith, 139 Mo. 322; In re Soulard's Estate, 141 Mo. 642; Borgess Inv. Co. v. Vette, 142 Mo. 560; Pace v. Waddell, 168 Mo. 99; Hattersly Brokerage & Com. Co. v. Humes, 193 Mo. App. 120. Moreover, the testimony of these witnesses was competent to identify the will as being in existence after the death of the testator; in other words, to show that the will which was proved by other evidence to have been made and signed by the testator and three witnesses, and declared by the testator to be his last will and testament on the evening of January 30, 1913, was found intact amongst the testator's effects immediately after his death, and that the will so found was the same will made and executed by the testator on the occasion mentioned; and the signatures of the testator and the witnesses to the will were as much a part of the will as any of its provisions, and the testimony of legatees that they saw the signatures of the testator and the witnesses to the will found by them amongst the testator's effects after his death was competent as identifying the will and as showing it was still intact and unrevoked after the testator's death, and their testimony could not be rendered incompetent for this purpose by reason of the fact that it also tended to prove the signing of the will by the testator and the witnesses. (2) The court committed no error in submitting to the jury the issue of whether or not the writing produced to the probate court for probate was or

was not the will of James Harrell. The issue in the case was made up by the petition and answer, and the answer alleged that James Harrell made a certain will which was destroyed. The contestants by not pleading to this answer by a proper motion, or demurrers waived any question, if there was a question, as to whether or not the will set forth in the answer should be the issue before the jury. By the petition and answer taken together, the court properly determined that the issue was whether or not the will of James Harrell as produced to the probate court was entitled to probate in solemn form. The real and proper issue before the circuit court was whether or not James Harrell had made a will, and if so, what were his testamentary dispositions and not whether the will as found and made by the probate court relating to testamentary disposition was the will of the testator. By the filing of a contest by proper parties in the circuit court, the interlocutory judgment of the probate court was vacated and set aside, and the cause was before the court as a trial *de novo*. When the case went to the circuit court by petition to contest, the whole matter was transferred to the circuit court for trial anew. Garvin's Admr. v. Williams, 50 Mo. 212; Hughes v. Burris, 85 Mo. 665; Lilly v. Tobein, 103 Mo. 489; State ex rel. v. Guinnotte, 156 Mo. 522; Banks v. Banks, 65 Mo. 436; Schaff v. Peters, 111 Mo. App. 460; Muller v. Hosp. Assn., 5 Mo. App. 390; Same case, 73 Mo. 242; Lamb v. Helm, 56 Mo. 432; Tingley v. Cowgill, 48 Mo. 294-295; Cox v. Cox, 101 Mo. 171; Gordon v. Burris, 141 Mo. 610; Stowe v. Stowe, 140 Mo. 602; R. S. 1909, sec. 555. (3) The writing produced in the probate court was not the will of the decedent, but a mere representation of his will. The paper writing which the probate court undertook to admit to probate as the last will and testament of the decedent was not the representation produced by the proponents, but the probate court undertook to admit to probate the paper writing executed by the decedent and which had been

destroyed and therefore could not be produced, and the probate court in admitting said paper writing to probate and adjudging it to be the decedent's last will, undertook to make a finding of the contents and provisions of the paper writing so admitted to probate as the last will and testament of the decedent, and undertook to produce a representation of the provisions of the will in lieu of the lost or destroyed instrument. (4) The proponents were therefore right in pleading the will actually made by the decedent, and in setting up its provisions and in praying the court to adjudge the paper writing actually made and signed by the decedent to be his last will, and to find and adjudge the provisions of the paper writing upon the evidence adduced, and if the proponents had not so pleaded, they would have lost their day in court. Rodgers v. Fire Ins. Co., 186 Mo. 255; Salmon v. Kansas City, 241 Mo. 54. (5) It is elementary law that if a will has been prepared by a testator in his lifetime and has been properly executed, then it is his will even though it may have been lost or destroyed. Graham v. O'Fallon, 3 Mo. 507; Dickey v. Malachi, 6 Mo. 177; Mann v. Balfour, 187 Mo. 299; Miltonberger v. Miltonberger, 78 Mo. 27. It is of course necessary for the proponents, to the end that the copy may take the place of the will itself, and be entitled to probate, that these facts should be thus proven.

GOODE, J.—This is a proceeding to contest the will of James S. Harrell, who died in Lincoln County, Missouri, March 27, 1915, leaving as his only heirs at law his mother, the plaintiff Geneva Harrell, and the defendants Albert, William, Sherman, Edward, Wesley and Harvey Harrell, his brothers, and Jennie Creech, a sister. The petition alleges that on Oct. 9, 1916, there was admitted to probate by the Probate Court of Lincoln County, as the last will of said James Harrell, the following instrument of writing:

"I James Harrell, of the County of Lincoln and State of Missouri, do make and publish this my last will and testament.

"1st.  I give and bequeath unto my mother Geneva Harrell the sum of $100.

"2nd.  I give and bequeath unto my brother Albert Harrell the sum of $1.

"3rd.  I give and bequeath unto my brother Wm. Harrell $500. .

"4th.  I give and bequeath unto my brother Sherman Harrell the sum of $500.

"5th.  I give and bequeath unto my brother Edward Harrell the sum of $1000.

"6th.  I give and bequeath unto my brother Wesley Harrell the sum of $500.

"7th.  I give and bequeath unto my brother Harvey Harrell the sum of $1.

"8th.  I give and bequeath unto my sister Jennie Creech, the sum of $1000.

"9th.  I give and bequeath unto my nieces, Dollie B. Creech, Jessie Belle Creech and Edna May Creech, each the sum of $500.

"10th.  I give and bequeath unto my nephew Trevey Harrell the sum of $500.

"11th.  I give and bequeath unto my nephew Richard Harrell the sum of $500.

"12th.  I give and bequeath unto my nephew Claudie Harrell and Riggs Harrell each the sum of $250.

"13th.  I give and bequeath unto my uncle Sidney Harrell the sum of $300.

"14th.  I give and bequeath unto my cousin Dora Scott, wife of Sam Scott, the sum of $300. .

"All the rest, residue and remainder of all of my estate whether real, personal or mixed, I give, devise and bequeath the same unto my sister Jennie Creech and my brother Wesley Harrell, Edward Harrell and Sherman Harrell to be shared by them equally. I hereby appoint my brother Edward Harrell executor of this will."

284 Mo.—15

The petition avers said instrument was not the last will of the said James Harrell, for these reasons: that the instrument was not signed and executed by James Harrell, nor did he declare it in the presence of two or more subscribing witnesses to be his last will, nor was it subscribed in his presence by two or more witnesses. The petition further says the plaintiff, who is the mother of said James Harrell, is entitled, as his heir, to one-eighth of his estate, which amounts to about ten thousand dollars. The defendants, other than the brothers and the sister of deceased, are his nephews and nieces, and the defendant, Edward Harrell is acting as executor of the last will of the deceased. The prayer is that the paper writing or pretended will of the deceased be declared and adjudged void.

The defendants Edward, Sidney and Jennie Creech, filed a separate answer wherein they admitted the death of their brother on the date alleged, and that he left as his only heirs at law his mother and the brothers and sister who are defendants; admitted further that the Probate Court of Lincoln County, on October 9, 1916, "admitted to probate as the last will and testament of said James Harrell, deceased, a will in form and substance substantially as set forth in plaintiff's petition." Those defendants denied said will was not signed by James Harrell as required by law, or that he failed to declare the instrument his last will in the presence of two subscribing witnesses; denied it was not subscribed in the presence of the testator by two or more witnesses, and further answering said that on the——day of——, 1916, there was filed in the Probate Court of Lincoln County a petition in which it was alleged said James Harrell left a will executed January 30, 1913, and duly witnessed by R. L. Sutton, William Hopkins and Curt Elston; that after the death of said James Harrell and while said last will was in full force and before the probate of it, the will was destroyed and could not be produced in the probate court; that the destroyed will was substantially in the following form:

## "Last Will and Testament.

"I, James Harrell, at the County of Lincoln and State of Missouri, do make and publish this my last will and testament.

"1. I give and bequeath unto my mother Geneva Harrell, the sum of $100.

"2. I give and bequeath unto my brother Albert Harrell, the sum of $1.

"3. I give and bequeath unto my brother William Harrell, the sum of $500.

"4. I give and bequeath unto my brother Sherman Harrell, the sum of $500.

"5. I give and bequeath unto my brother Edward Harrell, the sum of $1000.

"6. I give and bequeath unto my brother Wesley Harrell, the sum of $500.

"7. I give and bequeath unto my brother Harvey Harrell, the sum of $1.

"8. I give and bequeath unto my sister Jennie Creech, the sum of $2000.

"9. I give and bequeath unto my nieces Dollie B. Creech, Jessie Belle Creech and Edna May Creech, each the sum of $500.

"10. I give and bequeath unto my nephew Trevey Harrell, the sum of $500.

"11. I give and bequeath unto my nephew Richard Harrell, the sum of $500.

"12. I give and bequeath unto my nephews Claudia Harrell and Riggs Harrell, each the sum of $250.

"13. I give and bequeath unto my uncle Sidney Harrell, the sum of $300.

"14. I give and bequeath unto my cousin Dora Scott, wife of Samuel Scott, the sum of $200.

" All the rest, residue and remainder of all by estate, whether real, personal or mixed, I give, devise and bequeath the same unto my sister, Jennie Creech, and my brothers, Wesley Harrell, Edward Harrell and Sherman Harrell, to be shared by them equally.

"I hereby appoint my brother, Edward Harrell, executor of this my last will and testament.

"In witness whereof, I have hereunto set my hand this 30th day of January, 1913.

"(Signed)   JAMES HARRELL.

"Witnesses:

"WM. HOPKINS,

"CURT ELSTON,

"R. L. SUTTON."

Defendants further alleged that the said probate court, after appropriate proceedings, established the will recited in the answer, in the form set forth in plaintiff's petition.

A comparison of the will propounded in the answer in this case, with the paper set out in the petition as the one admitted to probate as the will of James Harrell, deceased, shows the only differences of consequence between the lost paper proposed in the answer as the will of James Harrell and the paper admitted to probate are, that in paragraph 8 of the will proposed in the answer, $2000 is bequeathed to Jennie Creech, whereas in the 8th paragraph of the will admitted to probate, the sum bequeathed to Mrs. Creech is $1000; and in the 14th paragraph of the instrument propounded in the answer, the sum bequeathed to Dora Scott was $200, whereas in the paper admitted to probate, the bequest to her was $300. The will recited in the answer purports to have been executed by the testator on January 30, 1913, and to have been witnessed by three men, William Hopkins, Curt Elston and R. L. Sutton; whereas the petition alleges it was neither executed by the testator nor subscribed by witnesses.

The defendants Albert, William and Wesley Harrell, who are in sympathy with the contestant, filed separate answers, admitting most of the allegations of the petition and especially that the paper admitted to probate was not the last will of James Harrell, but was void for the reasons alleged in the petition.

D. E. Killam was appointed guardian *ad litem* of Dollie B., Jessie Belle and Edna May Creech, and Trevcy Richard, Riggs and Claudia Harrell, and filed an answer denying knowledge or information sufficient to form a belief as to the truth of the allegations made in the petition and asking that strict proof be required of them.

After a trial by a jury a verdict was returned that the paper proposed by defendants Edward and Sidney Harrell and Jennie Creech, as a copy of the last will and testament of James Harrell, deceased, was in substance and effect his last will. This verdict was signed by nine of the jurors, and afterwards, on April 7, 1917, the circuit court entered judgment upon the verdict, establishing, as the last will of James Harrell, the paper propounded and set up in the answer of defendants Edward and Sidney Harrell and Jennie Creech, by which the said Jennie Creech was given a bequest of $2000, instead of one of $1000, as contained in the instrument admitted to probate, and Dora Scott, was given a bequest of $200, instead of $300, as in the probated will. Motions for new trial and in arrest of judgment were filed by defendants William, Wesley and Albert Harrell, were in due time overruled, a bill of exceptions was filed, and an appeal prosecuted to this court.

That on January 30, 1913, or near that day, James Harrell signed a paper for his last will and declared to William Hopkins, Curt Elston and R. L. Sutton, his witnesses, that it was his will, the evidence makes certain. There is conflict in the testimony as to whether, in fact, Hopkins and Elston subscribed the instrument as witnesses to it. At the time James Harrell, who lived in the country in Lincoln County, had an acute attack of appendicitis, and went from his home on or about said date to Mrs. Suda Moxley's home in Troy, the county seat of Lincoln County, where he stayed overnight, intending to go to St. Louis the next day for a surgical operation. That night, at the Moxley home, his physician, at his request, telephoned R. L. Sutton, a lawyer in Troy, to come to Mrs. Moxley's and write James Har-

rell's will. Hopkins and Elston were also requested to come to the Moxley home to subscribe the will as attesting witnesses, and went. James Harrell was sick in bed at the time. Before the arrival of the two witnesses, Sutton took down minutes of the disposition Harrell wished to make of his property. He appears to have had a deep antipathy to his brother Albert, and a milder dislike of his brother Wesley. He declared to several witnesses that he did not intend Albert should have any more of his estate than a dollar, which he said the law allowed Albert. The deceased had always been on good terms with his mother, the plaintiff, and she had lived alternately at his home and at the home of her daughter, Mrs. Creech; was living with the deceased at the date of the alleged will. There was evidence that deceased had stated as a reason why he did not intend to leave more of his estate to his mother, that if he did Albert would come in for a part of it. There was also evidence that he expressed an intention to devise to his mother the farm he lived on, which, in fact, was the ancestral home of the family. After the deceased had told Sutton what bequests he wished to make, Sutton wrote out the will, handed it to the deceased, who was in bed, the latter signed it in the presence of Hopkins, Elston and Sutton and declared it was his last will in their presence and requested them to "witness" it; those happenings the three all supported by their testimony. Just here there is a sharp conflict in the evidence. Hopkins and Elston testified they did not subscribe their names to the will as witnesses, because Sutton did not ask them to, and they supposed the will was sufficiently witnessed without their signatures, by the declaration of James Harrell to them that it was his last will. But there was strong evidence to prove they actually subscribed their names to it. Sutton left the paper containing the memorandums he had made lying on the table where he wrote it. He seems to have gone away hurriedly, and in a mood of absent-mindedness left that paper and also his gloves. Something is made of these incidents in

favor of the contention that he forgot to have Hopkins and Elston subscribe their names to the will. Mrs. Suda Moxley found the paper of memorandums and burnt it. When the contest arose later, as to whether deceased had in fact executed a will, and this paper was wanted as evidence, Mrs. Moxley acknowledged she had burnt it and refused to disclose its contents, saying she would do so when she had to; or words to that effect. There was also testimony that she offered to state the contents if some arrangement was made by which she and her daughters would receive some part of the estate; a statement positively denied by her. She was a cousin of the Harrells, and of Mrs. Creech, and was also related to Albert Harrell by marriage.

After making his will as related, James Harrell underwent a surgical operation in St. Louis, recovered from it and died about eighteen months afterwards. After his death his brothers and sister assembled at his home and the papers belonging to him were taken out of a dresser drawer and examined. Among them was the document proposed as the last will; but whether subscribed by attesting witnesses or not, is an issue in the present case. While this document was being read, testimony goes to show that Albert Harrell snatched it out of the hand of the brother who was reading it and threw it into the stove, where it was burnt. On the contrary there is evidence to prove it was burnt pursuant to an agreement of all the parties in interest, after an understanding had been reached that the estate should be divided equally among them, except that Mrs. Creech should receive an extra five hundred dollars. At any rate the document was then and there destroyed.

Albert Harrell testified he knew nothing about a will being burnt; but said a bunch of papers supposed to be of no value was handed to him to burn, and he put them in the stove. Witnesses swore to statements by Albert that he and his brother Harvey were going to "squash" the will and have an equal share in the estate or spend their last dollar trying to break the will.

It seems from what Mrs. Creech and other witnesses said they were under the impression the destruction of the will by Albert Harrell rendered it of no validity and the estate necessarily would be divided equally among the heirs. Later they learned that if the will was actually executed, it was valid notwithstanding its destruction and could be established in court; whereupon some of the legatees filed the paper alleged to be a copy of the last will of James Harrell, and it was admitted to probate in the form we have stated above. Plaintiff then filed this suit to contest the will, with the result that the document propounded in the answer of defendants was established as the last will of the deceased.

I. It is argued for plaintiff that the document proffered by defendants as a copy of the will of James Harrell was proved not to be the copy of a valid will at all,
Attestation. by the testimony of Hopkins and Elston (two of the three persons by whom it purported to be witnessed) that they did not subscribe their names to it. If this were the law, a will signed and published by a testator and properly attested, could be annulled by the sworn denial of the subscribing witnesses that they signed it, no matter how much evidence was introduced to show they did. The testimony of Sutton, whose name was signed to the instrument as one of the witnesses, was that he, Hopkins and Elston subscribed it at the request of the testator Harrell and in his presence; and that the names of those three men were on the paper, was testified by other persons. Was that evidence to be held for naught because Hopkins and Elston testified in contradiction of it? To say so would be equivalent to saying the oath of a person who is alleged to have subscribed a will, that he did not, is conclusively presumed to be true, although he, like other men, is subject to forgetfulness, to a misunderstanding of the character of a paper signed by him, and to the giving of false testimony. The conflict between the statements of Hopkins and Elston and that of Sutton and the witnesses who corroborated him, made an issue

of fact, to be passed on by the jury, like any other issue of the kind. At an early day this court decided that a will which had been lost or destroyed might be established by secondary evidence showing its contents; and that it was subscribed by the testator and by two witnesses in his presence; further, that one of those witnesses will be enough to establish the due execution of the will if he testifies he saw the other witness subscribed it in the testator's presence. [Graham v. O'Fallon, 3 Mo. 507, 511.]

One of the persons whose names appeared as witnesses to a contested will, testified he had no recollection of subscribing the paper or of the testator, with whom he was unacquainted, asking him to do so. The other person whose name was on the paper propounded as the will of the deceased, testified that both he and the person who appeared to be his co-subscriber, had signed their names in attestation of the will at the request and in the presence of the testator. The opinion said the question for the trial court was simply as to the fact whether the will had been attested by two witnesses in the mode the statute required. [Craig v. Craig, 156 Mo. 358, 361, et seq.] The point in hand was again presented in Avaro v. Avaro, and was ruled upon in these words: "The testimony of one witness to that effect [namely, a formal subscribing by two persons] is sufficient to show that the signatures of two witnesses were placed on the will to attest it." [235 Mo. 424, 429.] [See, too, Heimbach v. Heimbach. 202 S. W. 1123, 1128.] A kindred point was raised in several contests where one or all the subscribing witnesses refused to testify the testator was of sound mind when he made his will. In deciding the point this court said it was as essential to prove that fact as that the will was executed in legal form; but it was not essential for the subscribing witnesses to testify to the mental soundness of the testator. [Mays v. Mays, 114 Mo. 536.] In the opinion in the cited case the court declared the validity of wills

was not at the mercy of those who might be called upon to verify their execution; nor were their statements conclusive to sustain or destroy a will. Of the same tenor and effect are: Odenwaelder v. Schorr, 8 Mo. App. l. c. 464; Holmes v. Holloman, 12 Mo. 535; McKee v. White, 50 Pa. St. l. c. 360.

II. The testimony of Elmer Creech, husband of Jennie Creech and the father of three children born of their marriage, is said to have been incompetent because of his estate by the curtesy initiate in the land devised to his wife. Nothing was bequeathed or devised to Creech to bring him within the statute of the State which provides, as construed by the courts, that the devisees or legatees of a will are not permitted to testify to the formal execution of it while their interest continues. [Miltenberger v. Miltenberger, 78 Mo. 27, 31.] Aside from that circumstance, Creech's testimony went to prove, not the formal execution of the will, but that a paper appearing to be the will of James Harrell with the names of Sutton, Hopkins and Elston on it, was found among the papers of said Harrell after his death. He gave no testimony that James Harrell signed or published the will, or requested the three persons whose names were on the paper, to subscribe it as witnesses, or that they did so in Harrell's presence. Creech did not testify in his examination in chief that the names of Sutton, Hopkins and Elston were written by them on the paper. On cross-examination the contestants drew out of him the fact that he was acquainted with Hopkins's signature, and believed his name on said paper was in his handwriting; and this was the only statement he made tending to prove he knew who wrote the names. Sutton had already established the will prima-facie by his positive testimony to its formal execution in conformity to the statutes, and Creech's testimony bore on the question of the existence and destruction, after the death of James Harrell, of an instrument of writing which purported to be his will. [Hamil-

*Margin note: Witness: Competency.*

ton v. Crowe, 175 Mo. 634, 641.] His statements were admitted to prove such an instrument did exist, was destroyed, and the contents of it; and for that purpose the evidence was admissible, beyond doubt. In the case above cited (Graham v. O'Fallon) the court said that after the existence and loss of a will had been proved, the contents of it might be proved by secondary evidence. [L. c. 271.] The same decision was made in Dickey v. Malechi, 16 Mo. 177, and in Mann v. Balfour, 187 Mo. l. c. 299, 302, et seq., where the objection was raised to the competency of a witness to prove the execution of a will. This court held that the witness, whether competent for said purpose or not, was competent for other purposes, including, as the objection to her testimony showed, competency to testify to the contents of a lost will. At the trial of this cause, the court distinctly said, in response to the statement of an attorney for the defendants or contestees, that he offered Creech as a witness to show what was written on the paper which was burnt, for the purpose of indentifying it as James Harrell's will: "For that purpose the court will admit it; to identify it." None of the testimony given by Creech can be said to have borne upon the formal execution of the will, except the statement elicited on cross-examination, that he knew Hopkins's signature; of which, of course, plaintiff cannot complain. His evidence was admissible, as was that of the same character given by other witnesses.

III. Another proposition advanced by plaintiff is, that the circuit court had no jurisdiction to establish the instrument proposed in the answer of defendants as the will of James Harrell, deceased, because, in a contest proceeding, the only issue to be submitted to the jury is "whether the writing produced be the will of the testator or not." The thought here is that the jurisdiction of the circuit court in a proceeding like this is secondary and derivative; and that said court has no original jurisdiction, either to establish or reject a will, but must confine the trial to the issue defined by the statutes. We

agree that such is the law. [R. S. 1909, sec. 555.] Exclusive original jurisdiction of the proof of wills is given to, the probate court. [Banks v. Banks, 65 Mo. 432; Stowe v. Stowe, 140 Mo. 594, 603.] When a paper claimed to be a lost will has been established by said court as the will of the testator, or rejected by it as not his will, a proceeding may be instituted in the circuit court either to establish or reject the said will, and then the issue is fixed by the statute in the language we have quoted. The averment of the petition is, not that a paper was *produced* in the probate court with the exact provisions in it that were found by said court to have been in the document which that court established as the will of James Harrell; the averment is that an instrument of writing like the one set out in the petition *"was . . . admitted to probate* as and for the last will and testament of said James Harrell, deceased.'' The paper actually presented to the probate court as being the will left by the deceased was in the form of the instrument propounded in the answer of the defendants in this case, as is alleged in their answer.

The plaintiff does not propose in her petition any paper, either executed in due form or unexecuted, as the will of James Harrell, but instead alleges the one admitted to probate was void because it was not witnessed. The writing produced in the probate court as the will of the testator, was exactly the same writing proposed in the answer as his will; and hence at the trial in the circuit court the issue of whether said writing so proposed as the will of the testator, was his will, was properly left to the jury. In doing so the circuit court did not entertain original jurisdiction of a proceeding to contest a will; but only exercised its statutory jurisdiction to try a case brought to have rejected a writing which had been produced in the probate court for proof in common form, as the will of the deceased; to have it rejected on the theory that it had not been signed by the testator or attested. The case of Banks v. Banks, supra, invoked by the plaintiff against the right of the circuit court in

the present case, to establish as a will the writing proposed in the answer, and which was the very writing produced in the probate court, is not in point. In the Banks case the suit was to establish a will which the testator had burnt on the supposition that it had been revoked by a second will, when this was not the case, because the second will had not been witnessed. The real question was whether the burning of the first will on said supposition, revoked it, and the court held it did not; a question not material here. However, the defendants in the proceeding to establish the lost will, asked the court to establish, upon the evidence in the case, the second will, although it had been rejected in the probate court and they had filed no petition thereafter to have it established. It will be perceived that in said case the claim of the defendants was to have established an entirely different document from the writing in issue, and which the plaintiffs sought to establish and had produced in the probate court, we presume. Moreover, the court said they had not in their answer asked that kind of relief. In this case the plaintiff is not attempting to establish any paper as the will of the deceased. Both parties have reference to the same document, the only difference being the plaintiff claims it was not a will because it was never signed or attested; whereas the defendants claim it was a valid will because it was properly attested.

The judgment is affirmed. All concur, except *Woodson, J.*, absent.