PRICE M. THOMSON, Appellant, v. LETA BUTLER, ROZELL GRIFFITH, LAURA THOMAS, CLAUD GRIFFITH, Guardian, ELENOR JEAN BUTLER, COM. P. STORTS, Executor, LUCIAN THOMSON, LLOYD G. THOMSON, LIZZIE RICHARDSON, RUTH V. BUSH, CLAUD THOMSON, LILLIAN CRAWFORD, DOLLY TENNELL, ARTHUR DENNISON, BETTIE WINGER, LAURA RUCKER, CLIFF THOMSON, LLOYD RICHARDSON, FRANK BUSH, EARLY THOMSON, POLLY SMEETON, BETTIE RANDOL, COURTNEY THOMSON, JOHN THOMSON, OLIVER THOMSON, WADE THOMSON, JULIA THOMSON, EUGENE THOMSON, HUSTON THOMSON, CALVIN THOMSON.—147 S. W. (2d) 437.

Division Two, February 1, 1941.

270

*Jay L. Oldham, Percy C. Field* and *Ernest D. Martin* for appellant.

*William T. Bellamy* and *Perry G. Storts* for Leta Butler, Laura Thomas and Claud Griffith, Guardian of Laura Thomas, a Minor, and Leta Butler, Guardian *ad litem* for Elenor Jean Butler, a Minor; *Homer E. Rich* for Com. P. Storts, Executor.

TIPTON, J.—This is an action by the appellant to contest the will of Laura E. Saltonstall who died March 7, 1936. Her will (which the appellant designates as the 1933-34 will) was duly probated in the Probate Court of Saline County, Missouri, on March 18, 1936. The appellant's main contention in this court is that this will was revoked by a will executed by her in the fall of 1935, which, by its terms, revoked all former wills. However, this latter will was never offered for probate. Appellant contends that he made a search for it and was unable to locate it, but he did produce an unsigned copy of the purported will in the trial court. The jury found the issues for the respondents, finding that the 1933-34 will was the last

will of Laura E. Saltonstall, and judgment was entered accordingly in the Circuit Court of Saline County, Missouri. From that judgment the appellant has duly appealed to this court.

Laura E. Saltonstall was a childless widow who possessed at the time of her death about 1,000 acres of land in Saline County and other property of a total appraised value of $57,521.32. Under the 1933-34 will, the principal beneficiaries were Leta Butler, Rozell Griffith and Laura Thomas, girls whom she had reared but had not adopted and who were not related to her, while under the purported will of 1935 the principal beneficiaries were her brothers and sisters and the children of her deceased brothers.

The appellant's first point is stated in his brief as follows: "There is no substantial evidence to support the judgment because the 1933-34 will was revoked by the 1935 will containing a clause revoking all former wills, also made a full and complete disposition of all of the property of testatrix, and this intention should be enforced."

Respondents do not contend that the 1933-34 will is in effect if the testatrix did in fact execute the 1935 will. On the other hand, the appellant has not attacked the validity of the execution of the 1933-34 will but contends that it is not the last will of the testatrix and is, therefore, revoked by the 1935 will which has been either destroyed or lost.

Thus, the single issue is: Did Laura E. Saltonstall execute a will in the year 1935, as contended by the appellant. "Accordingly, one who asserts revocation by a subsequent will must prove the latter, and, if such subsequent will cannot be found, must show the same facts as if he were seeking its probate as a lost or destroyed will, and that its contents were so inconsistent with the former will as to revoke it, or that it contained an express clause of revocation." [68 Corpus Juris 990, sec. 990. See also McClellan v. Owens, 335 Mo. 884, 74 S. W. (2d) 570, 95 A. L. R. 711; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S. W. (2d) 462.]

To sustain the issue, appellant's testimony tended to show that on November 15, 1935, Laura E. Saltonstall gave the appellant a copy of her 1935 will, and in February, 1936, in her home, he read part of the original 1935 will, noting it was signed by her and witnessed by others; that a few days before her death she read this will to Early Thomson; that the night before she died she read it to Claud Thomson, who saw her name and two names signed thereto with pen and ink; and that she declared to each of these witnesses that it was her last will and that she wanted them to see that it was carried out as written.

Dr. R. H. Nuckles testified that he was an osteopathic physician and lived in Slater; that in the fall of 1935 Laura E. Saltonstall, in company with George Dyer, came to his office; that she took a paper out of an envelope and said she wanted them to witness her will;

that he saw her sign the original will and heard her declare it to be her last will and testament; and that at her request he and George Dyer signed the same in her presence and in the presence of each other, at which time testatrix was of sound mind and lawful age. At the time of the trial, the other witness to the will was dead.

· An unsigned carbon copy of the purported 1935 will was introduced in evidence.

"At an early day this court decided that a will which had been lost or destroyed might be established by secondary evidence showing its contents, and that it was subscribed by the testator and by two witnesses in his presence; further, that one of those witnesses will be enough to establish the due execution of the will if he testifies he saw the other witness subscribe it in the testator's presence. [Graham v. O'Fallon, 3 Mo. 507, 511.]" [Harrell v. Harrell, 284 Mo. 218, 223 S. W. 919, 1. c. 922.]

We hold that under the above evidence the appellant did make a prima facie case for the jury, but the jury disbelieved his witnesses and found against him, finding that the 1933-34 will was the last will of Laura E. Saltonstall.

Appellant contends that the verdict of the jury cannot be upheld because the testimony of Dr. Nuckles was not contradicted. He makes this contention in the face of the fact that he did not ask for a directed verdict. We are of the opinion that had he asked for a directed verdict, the court should have denied that request. The identical question was before the Supreme Court of Iowa in the case of In re Brown's Will, 143 Iowa, 648, 120 N. W. 667, 1. c. 669, and that court answered this contention in the following language:

"At the close of the evidence the contestants moved for a directed verdict, on the ground that their evidence was uncontradicted to the effect that the subsequent will was executed, and that this fact of itself had the legal effect to revoke the former will. They also urged that the evidence was uncontradicted that the alleged will of 1906 contained a revoking clause, and that they were entitled to a directed verdict on either theory. This contention of appellants is so clearly untenable that we will not dwell upon it at great length. The burden was upon the contestants to prove the facts upon which they based the contest. The fact that proponent was unable to contradict the testimony of their witnesses as to particular facts did not entitle them to have such statements accepted as true. *From the very nature of the case the proponent could not produce contradictory evidence on the particular facts in question.* Nor can the appellants say that the facts testified to by their witnesses necessarily and directly proved the execution of a subsequent will. These facts constituted circumstantial evidence. The ultimate fact could only be found by proper inference from the circumstances." (Italics ours.)

The burden of proving that the unsigned carbon copy of the purported 1935 will was a copy of a duly executed will, as contended by the appellant, as we have already said, was on him. He sought to prove this by oral testimony. We have many times held that the jury is privileged to believe or reject, in whole or in part, the testimony of any witness, even though uncontradicted or unimpeached. [See Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621, and cases cited therein.]

This is not a case where the appellant's proof rested solely on documentary evidence, and is, therefore, for the court; we hold the jury had a right to find that Laura E. Saltonstall did not execute a will in 1935 or a will subsequent to the 1933-34 will. If the jury had found that she did execute the 1935 will, then the carbon copy could be used to prove the provisions of the will the same as if it were the original.

We therefore hold that even though the appellant had asked for a directed verdict, it should have been overruled, and the jury had a right to declare the 1933-34 will the last will.

The next point made by the appellant is as follows: "There is no evidence to sustain the judgment, because after the execution of 1935 will, the 1933-34 will was revoked, and never revived or republished, and although at the death of testatrix said 1935 will was taken possession of and destroyed by strangers, such act cannot revive the first will."

Of course, this point is begging the question, as we have just ruled there was no 1935 will. The respondents make no contention that the 1933-34 will was ever republished.

The last point made by the appellant is as follows: "Judgment grounded on a revoked 1933-34 will calling it the 'last will,' in face of a 1935 will of testatrix, changing the verdict, making a new verdict for the jury, as shown by the record proper, not only has nothing to sustain it, but same is contrary to law, and causes said judgment to be illegal, erroneous and void."

In developing this point, the appellant contends that the prima facie case made by the proponents of the 1933-34 will was overcome and completely destroyed by his undisputed testimony. We have already ruled this question adversely to the appellant.

The verdict of the jury found that the 1933-34 will was the will of Laura E. Saltonstall, deceased. The judgment conforms to the verdict and is proper.

From what we have said, it follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.