253 S.W.2d 132 (1952)
BENNINGTON et al.
v.
McCLINTICK et al.
No. 42920.
Supreme Court of Missouri, Division No. 2.
November 10, 1952.
Motion for Rehearing or to Transfer to Denied December 8, 1952.
*133 J. W. Stipelman, Erwin B. Tucker, Louis E. Zuckerman, St. Louis, for appellants.
Harry H. Kay, Eldon, Leon P. Embry, California, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied December 8, 1952.
WESTHUES, Commissioner.
Plaintiffs filed this suit in the Circuit Court of Miller County, Missouri, seeking specific performance of an alleged agreement made between James W. and Julia A. Miller, husband and wife, to dispose of their property by a joint or mutual will. The trial court entered a decree for plaintiffs and the defendants appealed.
Title to real estate is directly involved in this case and the amount in dispute is in excess of $7,500, hence appellate jurisdiction is in this court.
Respondents filed a motion to dismiss the appeal in this case. The motion is based on the theory that appellants in their brief violated Rule 1.08 (a) and (b) of this court. We have determined to decide the case on its merits and overrule the motion to dismiss without considering its merits.
The evidence revealed the following facts: James W. Miller and Julia A. Miller were married on March 31, 1932. James W. was a widower and Julia was a widow having previously been married to George Arthur Bennington. James W. Miller did not have any children; Julia had two children who are the plaintiffs in this case. The defendants are Charles R. McClintick, a half-brother of James W. Miller, and May Mehlinger and Arthur A. Miller, sister and brother of James W. Miller. The defendant Erwin B. Tucker is the administrator with the will annexed of the estate of James W. Miller, deceased.
Julia A. Miller died on May 11, 1949, and James W. Miller died on November 28, 1949. The defendants were named as beneficiaries in a will executed by James W. Miller on May 24, 1949, thirteen days after the death of his wife, Julia. This will was probated in the Probate Court of Miller County, Missouri. The estate consisted of real estate located in Miller County, Missouri, which was appraised at $10,000, and personal property appraised at $3,089.
Plaintiffs introduced evidence tending to prove the following: On July 12, 1946, James W. and Julia A. Miller went to the office of Harry H. Kay, an attorney, at Eldon, Missouri, and consulted him about making wills. Mr. Kay testified that the Millers informed him that they wished to make wills so that all their property would go to the survivor and at the death of the survivor, they wanted the property to belong to the children, the plaintiffs in this case. Mr. Kay's testimony was that he prepared a joint will which was read and the effect thereof explained to them; that this will was duly executed on that day; that it was signed by both parties and that he and his law partner, Roy Starling, now deceased, signed as witnesses; that he gave the will to Mr. Miller. Mr. Kay testified that he retained an unsigned carbon copy of the will. There was evidence that the original will duly executed was in existence at the time of and after the death of Mrs. Miller. Plaintiff Violet Ruth Fuller testified that after her mother's death, her stepfather informed her he had *134 burned the will. The plaintiffs introduced in evidence the carbon copy retained by Mr. Kay as evidence to support their contention that the Millers had agreed to execute a joint will whereby they were to devise all of their property to plaintiffs. This carbon copy contained the following paragraph:

"`Article I
"`We jointly and severally declare that the provisions hereinafter made for the disposition of property owned by each of us are the result of a contract and agreement between us, that the provisions made for each of us are induced by the provisions made by the other and that the provisions made for each of us are the consideration for the provisions made each for the other. We further declare, each for himself, that neither of us would have made the provisions herein contained, for the other had not the other made the provisions, herein contained, for him; and each of us, in consideration of the premises and of a like promise and agreement of the other, which is hereby made, agrees not to revoke, change, alter, or amend this will, except that prior to the death of either of us this will may be changed, cancelled, annulled or amended by another will or by a codicil, duly executed by both of us.'"
By this copy of the purported will, the property owned by the Millers was to be the absolute property of the survivor and on the death of the survivor, all property (with the exception of a few $1 bequests) was to go to the plaintiffs in this case. Plaintiff Violet Ruth Fuller was named as executrix. She testified as follows:
"Q. I'll ask you to state, Mrs. Fuller, whether or not James W. Miller and your mother at any time subsequent to July 12, 1946, talked to you about having made a Joint and Mutual Will? A. Yes, sir, they did.
"Q. Were both of them present at the time? A. Yes, sir.
"Q. Did both of them talk to you about it? A. Yes, sir.
"Q. Tell the Court what they said. A. They told me they wanted to tell me about it because I was appointed administrator and they knew I would see to things in case something happened to both of them. I don't know why they felt that way, but they planned to do some travelling after daddy retired, and they said they knew I would see that the property would be divided equally between my brother and I."
We shall now consider the points briefed by defendants. They say, "The Court was without jurisdiction over the subject matter of this action." Defendants say the Probate Court had exclusive jurisdiction. Defendants' theory upon which this contention is based may be understood by quoting a portion of defendants' argument. Note what they say: " * * * the plaintiffs here pleaded an unprobated alleged joint and mutual will, under which they are claiming title to the lands of James W. Miller, allegedly superior to that of defendants here whose title stems from the duly probated will of James W. Miller, but which was never contested in either the Probate Court, or the Circuit Court, and which was fixed by the unassailed judgment of the Probate Court there establishing the will under which defendants are claiming. We have shown that no title can stem from an unprobated will." In making such an argument, the defendants have wholly misunderstood or ignored the plaintiffs' claim for relief. Plaintiffs do not claim title under the purported joint will. By their petition they say to the court that they do not have title but ask the court to decree title in them because James W. Miller, their stepfather, contracted with their mother to execute a joint will whereby the property was to be devised to them and their stepfather has not complied with that contract. That a court of equity has jurisdiction to grant such relief has been well established. Note the cases cited in 58 C.J. 1063, Sec. 313; 69 C.J. 1300, Sec. 2722, and Sec. 2726 at page 1302, where we note the following: "While a court of probate cannot admit a mutual will to probate where it has been *135 revoked by the testator, it is well settled that, where the revocation was wrongful and unauthorized, and the testator had devised or bequeathed his property in a manner other than that contemplated by the agreement on which the mutual will was founded, a court of equity, by reason of its extraordinary power to enforce specific performance of contracts and to prevent frauds, will ordinarily enforce such agreement, in order to prevent fraud and injustice, by decreeing a specific performance of the agreement, * * *." That is the rule in this state. Wanger v. Marr, 257 Mo. 482, 165 S.W. 1027; Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910.
What we have said also disposes of another point wherein defendants say that "Plaintiffs' petition failed to state a claim upon which any relief could be granted to them in this action in equity."
Defendants say the decree in plaintiffs' favor is not supported by sufficient and substantial evidence. To this we cannot agree. Agreements of this nature may be proven by direct or circumstantial evidence. It must, however, be established by clear, definite, and convincing evidence. In the case before us, plaintiffs' evidence leaves no doubt of the fact that James W. Miller and his wife Julia entered into a contract to execute a joint or mutual will by which they were to devise all their property to plaintiffs. Defendants introduced but meager evidence to the contrary. Plemmons v. Pemberton, supra, 139 S.W.2d loc. cit. 916 (8,9).
Interwoven with the point that the evidence was insufficient to support the decree is the claim of defendants that plaintiffs' mother and plaintiffs repudiated the contract. This argument is based upon the theory that the mother left notes asking that certain property be given to plaintiffs immediately after her death. James W. Miller did give each plaintiff certain property after the mother's death. Plaintiffs testified that this was done not because of the mother's wishes but because James W. Miller insisted on giving them such property. Even if plaintiffs' mother left such notes, they were not binding on James W. Miller and he did not consider them so. Plaintiff Mrs. Fuller asked for a rug of her mother's. Note James W. Miller's reply in a letter dated August 2, 1949:
"Dear Violet:
"I hasten to reply to your last letter which came after my letter was mailed. Little Girl, you possibly realize that no one can love that rug you spoke of more than I and the other beautiful things you mention. For that reason I cannot relinquish them nowany of them at this time."
The evidence in this record does not justify a finding that plaintiffs' mother abandoned or repudiated her contract.
The defendants' first point is subdivided into a number of subtitles wherein numerous reasons are advanced that the trial court's decree is for the wrong party. Most of these are based upon a false theory. Defendants assume that plaintiffs are claiming title under the purported will. As we noted above, plaintiffs make no such claim and this is not a suit to establish a will. Note the tone of defendants' points. In subdivision (a) they say, "It (the will) did not have life, take effect, or have the force of a will, since it was not previously probated in the Probate Court, and hence was incompetent as an instrument, or a muniment of title." In subdivision (b) they say, "An unprobated will is not admissible to show title intended to be passed thereby." Other subtitles of the first point briefed are based on the same theory. The carbon copy of the purported joint will in this case was introduced in evidence not on the theory of establishing it as the last will and testament of James W. Miller and Julia A. Miller but solely for the purpose of proving that the parties had entered into a contract to execute a joint will whereby property was to be devised to plaintiffs. The carbon copy was competent evidence for that purpose. The original could not be produced. Thomson v. Butler, 347 Mo. 269, 147 S.W.2d 437, loc. cit. 438 (1).
Cases of this nature are reviewable de novo in this court. A review of the *136 evidence has convinced us that the trial court entered judgment for the right parties. The evidence justified no other finding.
The judgment is affirmed.
BOHLING and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.
All concur.