WEST et al., *Appellants*, v. WEST et al.

Division Two, May 17, 1898.

1. **Practice**: STRIKING OUT REPLY. It is no error to strike out so much of the reply as has already been alleged in the petition.

2. **Will**: PRACTICE: DEMURRER TO EVIDENCE. Where the evidence is sufficient, if believed by the jury, to establish a will, a demurrer to proponents' evidence should be overruled.

3. ———: REVOCATION: SUBSEQUENT WILL. To work a revocation of a properly executed will by a subsequent will, the last must be in writing, signed by the testator, or by some person by his direction in his presence, and be attested by two or more competent witnesses in his presence.

4. ———: ———: EVIDENCE. In view of the facts detailed in the opinion, it is held that there was a total failure of proof of the execution of a subsequent will.

5. ———: NUMEROUS INSTRUCTIONS. When the trial court has given instructions that fully and clearly declare the law governing every issue in the case, it is not error to refuse others of the same meaning and import.

6. ———: UNDUE INFLUENCE. Under the pleadings and evidence in this case it is held that the trial court properly instructed the jury that the only issue for them to determine was whether or not the will was procured by the undue influence of one of the devisees.

7. ———: ———: FIDUCIARY RELATIONS. Even if a jury find that a devisee stands in a fiduciary relation to the testator, it is only one of the subsidiary facts upon which the charge of undue influence may be based.

8. ———: ———: CASE REVIEWED. The facts of this case are reviewed, and it is held there is no evidence of undue influence exercised upon the testator.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*D. H. McIntyre, J. W. Boulware, S. W. Bickley* and *John M. Barker* for appellants.

(1) The court erred in ruling out the main issue of the case when counsel stated: "That shows the condition of his mind." The judge replied: "That is not in issue at all. The condition of his mind is not in issue." This declaration is not sanctioned by the law. *Meyers v. Haugher*, 98 Mo. 433. (2) The court erred in refusing to allow the evidence to show that Wm. C. West died believing that Jno. J. Steele was his executor. These facts show almost conclusively that Wm. C. West made a will later than the one in controversy; yet the court seemed determined to exclude all evidence which tended to show that the paper in controversy was not the last will of the deceased. (3) The evidence, the most of which was excluded by the court, tends to show that there was a later will than the one of February 21, 1887, and that Wm. E. West and W. W. Fry got possession of that will and it has disappeared. (4) The court erred in sustaining motion to strike out part of reply, because it did not specify what part was desired stricken out, and it should not have been sustained had it been in proper form. (5) When a confidential relation is shown to exist between the testator and the recipient of his bounty, an exerted influence will be presumed to have induced the bequest, and the *onus* is cast upon

the beneficiaries to make explanation of the transaction and establish its reasonableness. *Maddox v. Maddox*, 114 Mo. 35; *Jones v. Roberts*, 37 Mo. App. 163; *Carl v. Gabel*, 120 Mo. 298; *Gay v. Gilliam*, 92 Mo. 251. (6) To all intents and purposes, covering the latter eight or ten years of his life, the will of Wm. E. West was substituted for that of his father. This court will readily see from the evidence that, for many years past, in all matters between testator and Wm. E. West, said Wm. E. West was the ruling and overruling power. For this reason we say the first instruction, given at the request of the proponent, was erroneous. It was misleading and against the law.

*W. W. Fry* and *R. D. Rodgers* for respondents.

(1) The verdict was overwhelmingly supported by the evidence. But, if not, an action to contest a will is an action at law in which the parties are entitled to a jury, and its verdict will not be disturbed on appeal on the ground that it is against the weight of the evidence. *Garland v. Smith*, 125 Mo. 567. (2) Why a person made certain statements is not proper inquiry, and the so-claimed statement was in 1868 and was not proper to show undue influence in 1887. *McFadin v. Catron*, 120 Mo. 266; *Maddox v. Maddox*, 114 Mo. 41; *Juckson v. Hardin*, 83 Mo. 184. (3) The court gave plaintiff every opportunity to prove the execution of a second will in 1887. The execution of the will under contest was not questioned. To overcome this the execution of a subsequent will, in compliance with Revised Statutes 1889, section 8870, is required. (4) There was no such will pleaded. The petition pleaded the will of February, 1887, and contested it on the ground of undue influence. That was the only issue, (5) There must have been undue

influence exercised in the procurement of the will. *McFadin v. Catron,* 120 Mo. 252; *Berberet v. Berberet,* 131 Mo. 410; *Maddox v. Maddox,* 114 Mo. 36. (6) There must be proof of fiduciary relation: that the beneficiary wrote or advised the terms of the will. And he must be a beneficiary under the will. 1 Werner on Administrators, sec. 32. (7) Respondent did not even assist in the collection of rents until after this will was executed. There is no evidence that he held a fiduciary relation and none that he dictated or advised the terms of the will, but on the contrary he did not know the contents of it until after it was made. Therefore there was no evidence of undue influence. *Jackson v. Hardin,* 83 Mo. 184; *Maddox v. Maddox,* 114 Mo. 49; *McFadin v. Catron,* 120 Mo. 272; *Thompson v. Ish,* 99 Mo. 182. (8) Appellant gives much space to the claim that there was a subsequent will to the one contested. The burden was on appellants to prove the execution of such will and then account for its absence. Having failed in that it was not an issue for the jury. *Morton v. Heidorn,* 135 Mo. 615.

GANTT, P. J.—This is a statutory contest of the last will and testament of William C. West, late of Audraïn county. This will was duly probated December 31, 1894, and this suit was commenced and made returnable to the June term, 1895, of the circuit court of Audrain county. The plaintiffs are the widow and certain of the children and grandchildren of said decedent, and the defendants are his son William E. West and his daughter Mrs. Mills and her husband.

The *petition* sets forth the death of William C. West in December, 1894, the various children and grandchildren; their relation to William C. West; the probating of the paper writing of date February 21, 1887, and charges that William E. West falsely pretended

that said instrument was the last will of said William C. West; that William E. West controlled and managed the business affairs of his father and exercised an undue influence over him by threats, intimidation and coercion, and thus was enabled to direct and control his father in the execution of said will to such an extent that it was not the will of said William C. West. That if William C. West did sign the said paper writing his signature was procured by fraud, coercion and undue influence of said son. That it was not executed and attested as required by law. Plaintiffs state further that the deceased has executed another and different will than the one in controversy long since the twenty-first of February, 1887, the date of the writing in this controversy. They then prayed that an issue of *devisavit vel non* be made up and tried. The *answer* avers the death of William C. West in Mexico, Missouri, on the —— day of December, 1894. They then aver that on February 21, 1887, William C. West was of sound mind and over the age of twenty-one years and on that day made and executed his last *will and testament* in the words and figures following:

"I, William C. West, of the county of Audrain and State of Missouri, do make, publish and declare this my last will and testament, hereby revoking and annulling all former wills by me made.

"*Item 1st.* I give and bequeath to my wife, Sallie West, in lieu of all dower and homestead in my real estate and all dower in my personal property and in lieu of all other demands or claims whatsoever against my estate, all my household and kitchen furniture, beds, bedding, and everything contained in and about my dwelling house that may be termed household and kitchen furniture, except as hereinafter provided; also my buggy and harness, to have, hold, use and enjoy during her natural life, and at her death it is my wish that all of

said personal property be divided equally between my sons Wm. E. West, Francis M. West and my daughter Belle Mills. I also give, devise and bequeath unto her, my said wife, Sallie West, the following described real estate situated in the county of Audrain, State of Missouri, to wit, lot one (1) in block four, in the County addition to the town of Mexico, Missouri, to have and to hold, use and enjoy the same for and during her natural life only. And I further give, devise and bequeath to my said wife, Sallie West, to be paid to her by my executor as collected by him, one fourth of all rent arising and coming from my six store buildings situated on the east side of Washington street (beginning at the corner of Promenade and Washington streets and running north) in the city of Mexico, Missouri, to be paid to her during her natural life only.

"*Item 2.* I hereby devise, give and bequeath to my daughter Sallie Ann Kabrich, the sum of one dollar in addition to advancements heretofore made to her and to her husband; also to John A. West the sum of one dollar, I having heretofore made my advancements to him. Also to my granddaughter May Snider, I give the sum of one dollar. I have heretofore made advancements to her and her mother Nancy Snider, during her life time; and also to my grandchildren, Ada West Sheeley, Charles West and Ida West, I give each the sum of one dollar. I having heretofore made advancements to them and their father, James H. West, during his lifetime.

"*Item 3.* I hereby give, devise and bequeath to my son, Francis M. West, the sum of eighteen hundred and seventy-five dollars. And I also give and bequeath to my daughter Belle Mills the sum of two thousand dollars, and I further give, devise and bequeath to my sons William E. West, Francis M. West and my daughter Belle Mills lot No. 1 in block 4 in the county

addition to the town of Mexico, county of Audrain, State of Missouri, subject to a life estate in my said wife Sallie West, as hereinbefore provided for in item No. one of this, my will, they, the said William E. West, Frances M. West, and Belle Mills to have, hold and enjoy the same on equal parts to themselves forever, subject only to the life estate of my said wife, Sallie West, as above provided.

"*Item 4.* I hereby give, devise and bequeath to my son William E. West, all the rest, residue and remainder of my estate, both real and personal estate, of whatever kind and wheresoever situated, of which I may die seized and possessed, including any money, notes or other property of any kind I may have, own or possess at my death, subject to the payments of my just debts and the payment of the above mentioned special legacies.

"Reposing confidence in the honesty and integrity of my son, Wm. E. West, I hereby appoint him executor of this, my last will and testament, and direct that he may so act and settle up my estate without giving any bond as such executor. Witness my hand in witness whereof, this 21st day of February, A. D. 1887.

"WILLIAM C. WEST.

"The foregoing instrument was at the date thereof signed and declared by the said above named W. C. West to be his last will and testament in the presence of us who at his request and in his presence and in the presence of each other have subscribed our names as witnesses thereto.

"W. S. MOSBY,
"W. W. FRY,
"Witnesses."

Defendants averred this was his last will and denied each and every allegation and statement in plaintiffs' petition not specifically admitted in their answer

to be true and prayed judgment establishing said will. Plaintiffs *replied* and denied all the new matter in the answer. Admitted that the answer set forth a true copy of the alleged will admitted to probate. They then made this allegation:

"They say that said will is not the will of said W. C. West. That said pretended will was procured and signed by said W. C. West, under threats, force, duress and under persuasion exercised over him by the chief and principal beneficiary thereunder, to wit, his son Wm. E. West, at whose instance, and by whose directions said will was signed. They futher say, that at the time said pretended will was made that said Wm. West was made the manager of all the business matters of said W. C. West, controlled, conducted and looked to the same; was the close, confidential and fiduciary agent of said W. C. West; had complete control over him at the time said pretended will was made, and for many years prior thereto. That when said pretended will was made, said W. C. West was about ninety years of age, was weak and infirm in body and mind, wholly subject to the directions and control of said W. E. West; that said pretended will is not the will of said W. C. West. That the allegations in plaintiffs' petition are true." Now, having fully replied they asked for judgment as prayed for in their petition.

On motion the court struck out all of said portion of said reply last quoted because it was already a part of the petition and was not matter to be pleaded in reply. The cause was tried to a jury and resulted in a verdict sustaining the will. The defendants, the proponents of the will, offered their evidence in chief of the due execution of the will; the age of Mr. West and his soundness of mind; the publication of the paper writing and the paper writing itself and rested. The plaintiffs demurred to this evidence which the court

overruled and plaintiffs excepted. Various grounds for reversal are urged and will be considered in the order of the plaintiff's assignments.

I. There was no error in striking out a part of the reply. The matter so stricken out was but a repetition of the averments of the petition that the testator was a man ninety-two years of age; that the will was procured and signed by said testator under the influence of his son William E. West; that his said son was his close confidential financial agent at the time, and that he was under the control of his said son. All this had already been alleged in the petition and the repetition did not enlarge the issue and its elimination in no way restricted the plaintiffs from proving every fact stated in it.

II. Neither was there any error in overruling the demurrer to the evidence of the proponents in making their *prima facie* case. If believed by the jury it was entirely sufficient to establish the will. No effort whatever was made to show that the testator had not complied with every statutory requirement in the execution of the paper as his last will and the subscribing witnesses fully proved that Mr. West was a man of unusually strong and vigorous intellect and was about eighty-five years old at the time of its execution. No suggestion is made in the briefs or argument either technical or substantial, to support this demurrer to the evidence.

III. Complaint is made that the court excluded evidence tending to prove that the testator had excuted and published a later will than the one contested by the plaintiffs in this case, and erred in giving the ninth instruction in behalf of the defendants or proponents to the effect that there was no evidence of the execution of any will by William C. West subsequent to the one read in evidence dated February 21, 1887, and withdrawing the evidence of John J. Steele from their con-

sideration. The claim of a subsequent will is predicated entirely upon the evidence of the witness Steele. He stated that his "impression" was that he wrote a will for W. C. West in the spring or summer of 1887. Witness was in the drug business at the time on Washington street in Mexico; that witness was the executor in that will. He was questioned by plaintiffs and replied as follows: "State if it (the will prepared by witness) was properly signed and witnessed as other wills? *A. I don't remember about that.* Q. You do not remember who this witness was? A. No, sir, I don't. Q. You wrote the will while you were in that store? A. I think I did. *That is my best impression.*" Cross-examination: "Q. You don't swear positively that you drew a will for him in 1887? A. I can't do that. Q. You don't know whether that will was witnessed by any one or not? *A. I don't remember about it,* but I have no doubt on the subject. I don't remember specifically. Q. You can't recall the names of the witnesses that did witness it? A. No, sir. Q. Here is a will dated August, 1882; whose handwriting is that? A. That is mine. Q. Here is one dated in 1879, whose writing is that? A. Judge Macfarlane's. Q. Here is one dated January 1, 1885, whose writing is that? A. That is mine." Redirect examination: "How many wills did you ever write? A. I wrote three or more." Witness identified two of the wills as written by him. By the court: "State how this (last will) was attested, · if it was attested? *A. I can't say that it was attested,* but I am sure it was." By Mr. Barker (plaintiffs' counsel: "You can't remember the witnesses that attested any of these wills? *A. No sir, I can not.*" He further stated that he went by a former will in drawing the will *but he don't know which one of them.*

By our laws sections 8870 and 8871, Revised Statutes 1889, "Every will shall be in writing, signed by

the testator or by some person by his direction, in his presence, and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator. No will in writing except in the cases hereinafter mentioned, nor any part thereof, shall be revoked except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same by the testator or in his presence and by his consent and direction." Sections 8872 and 8873 provide for revocation by subsequent marriage of the testator and his death leaving issue, and the marriage of a *feme sole* is deemed to revoke her will made *dum sola*. None of these clauses of the statute are pertinent to this discussion except the execution of a subsequent will. To work a revocation by a subsequent will it must be in writing, signed and attested as required by section 8870, because "every will" is required to be so executed by that section. Is it not too plain for discussion that the witness Steele's evidence was wholly and signally deficient in establishing such a will? He simply has an impression that he wrote a will in 1887 but will not be positive about it. He does not fix a date. He does not know that it was attested, nor the names of the witnesses to it, nor can he tell which will he followed out of three exhibited to him. Such vague and unsatisfactory impressions as to the time, as to the substance of the will, and as to its attestation, do not satisfy the requirements of the statute, and the court was right in declaring that there was no legal proof of the execution of a will subsequent to the one in contest, and in confining the issues to the execution of that will and the issue tendered by plaintiffs that it was obtained by undue influence. Waiving all question of the insufficiency of the pleading of the execution of such subsequent will, it is evi-

dent that the court afforded the plaintiffs great lati-
tude in their efforts to establish such subsequent will
and there was a total failure of proof in that respect
on their part.

IV.   It is also assigned as error that the court erred
in refusing instructions numbered 8 and 13, 14, 18
and 19 prayed for by plaintiffs.   It is sufficient to say
that these instructions were on the subject of the con-
fidential relations which plaintiffs charge existed be-
tween the testator and his youngest son, William E.,
and the court had already given the fullest instructions
on that subject on behalf of plaintiffs, among others,
the following:

"6.   The court instructs the jury that if they be-
lieve from the evidence that William E. West was the
son of the testator, William C. West, that at the time
of the making of the paper purporting to be his will
and for several years prior thereto, he sustained con-
fidential and fiduciary relation towards his father, and
that he resided with his father until death, managed
and controlled his business affairs, had the close and
implicit confidence of his father; that his father looked
to him for advice, council and direction, was con-
trolled by him and his judgment over and above his
own on business matters, and that he is the largest
beneficiary in said will, and further find that the will
in controversy is the result of such influence or con-
trol of the said W. E. West, and not the free, volun-
tary, deliberate offspring of his own mind, they will
find that the writing or will in controversy is not the
will of said William C. West."

"7.   The court instructs the jury that in deter-
mining the question whether undue influence was used
to procure the execution of the paper writing offered
as the last will of William C. West, they will take into
consideration said William C. West's age, mental and

physical condition at the time of executing it, the will itself and the provisions therein, together with all the other facts and circumstances shown by the evidence.''

"10.   If the jury believe from the evidence in this cause that there has been an unequal discrimination in the division of the property, if they believe that the evidence in the cause further shows an undue influence of the said Wm. E. West over the mind of his deceased father as existing prior to, at the time and since the date of the proposed will, then it devolves upon the proponents to show by the preponderance of the evidence a reasonable cause for such discriminations, if any, and so believing if the jury fail to find such reasonable and just cause for such discrimination, if any, they should find that the writing in question is not the will of W. C. West.''

Outside of the objectionable form of the refused instructions, as being comments upon the evidence, it was not error to refuse them after the court had given such favorable instructions for plaintiffs.   This court has too often commented upon the useless multiplication of instructions to condemn the circuit courts when they endeavor to simplify the issues to be tried and stop when they have submitted the whole ques- to the jury.   Granting that these refused instructions declared correct legal principles the court had already fully submitted the question of undue influence and additional instructions could only have confused the jury.   For this reason alone no error was committed in refusing them.

V.   Appellants complain of the first instruction given for proponents or defendants because the court in that instruction tells the jury that the only question for them to determine under the pleadings is whether the will propounded was executed by the testator of his own accord or was procured by undue influence exer-

cised over him by his son, William E. West, at the time of its execution.    The court very properly confined the jury to the issue of undue influence for several reasons. The plaintiffs had attacked the will only on that ground and on the ground of a subsequent valid will, which presupposed mental capacity to make a will, and themselves offered evidence to show that the testator was of sound mind in the spring of 1887 soon after the execution of the will in controversy; but independently of these considerations the *prima facie* case made by the defendants, the proponents of the will, established that it was duly executed and attested by William C. West as required by the statute, and the surviving subscribing witness and medical attendant fully established the fact that he was of sound mind at the time.    That *prima facie* case was unshaken by anything subsequently disclosed on either side.    This instruction did nothing more than to clearly declare what the remaining issue was.    It told the jury that the paper writing offered as the will of William C. West was *under the evidence* the last will executed by said West; that it was in due form, but that there was an issue whether it was his free act or had been procured from him by the undue influence of his son, and that was the only issue.    But counsel criticise the instruction because the court told the jury that was the "only" issue.    They insist that the jury should have been left to find that William E. West stood in a fiduciary relation to his father.    It is evident that this is a hypercritical objection.    The question of the fiduciary relation was fully submitted in the instructions on both sides.    Besides, that relation if a fact, was one of the subsidiary facts upon which the charge of undue influence was based, and was included in that issue which covered all the facts and relations upon which plaintiffs endeavored to make good that

allegation, and was made prominent in the instructions already copied.

The substantial facts elicited by the testimony were substantially these: The testator W. C. West was a pioneer Missourian. He accumulated much valuable real estate. He was twice married. No children were born of the second marriage. Seven children, four sons and three daughters, were born of the first marriage. William E. West was the youngest child and resided with his father until his death. The testator made advancements to all of his children. He gave each of his children except Wm. E. a half section of land which he valued at $10 per acre. In addition to this land he gave each child in his lifetime except William E. West, money and personalty in various amounts. To Mrs. Kabrich, he gave $2,925; to Mrs. Snider, $1,560; to F. M. West about $3,000; to Mrs. Mills, $1,460; to James N. West, $2,126; to John A. West, $4,050. He gave the youngest son one hundred and twenty acres of land in Mercer county by deed November 29, 1861, and afterward in 1868 as guardian of William E. sold and conveyed said tract to Jacob McDonald. In each of the three prior wills offered in evidence, the testator recited the giving of said lands to his son William E., his sale thereof as guardian, and that the proceeds of said sale were still in his hands as guardian and gave him in each of said wills other real estate in lieu of the money due him for the sale of said lands. No witness testified that William C. West was of unsound mind prior to the time of the execution of the will in contest, but all agreed that he was a man of strong will and purpose. The evidence tended to prove that William E. West was very kind and attentive to his father, a number testifying that his conduct could not have been better in that regard. To show undue influence the plaintiffs introduced evi-

dence that William E. collected his father's rents. The evidence on this point discloses that up to 1893 the old gentleman collected his own rents very promptly; that now and then a tenant would pay the son some rent for his father but that it was entirely satisfactory with the father, but the collection of the rents all occurred after the execution of the will in 1887. It was also shown that the son was engaged in breeding and running horses; that his father before him had been a horse racer and greatly enjoyed any success which came to his son's horses. Now and then some slight difference occurred between them as to the management of some of the horses they owned in common, and the witnesses said that in the end the father yielded to the son. Then again there was some evidence of a wordy altercation between William E. and a brother which the father did not hear. There was as usual a different estimate of the value of the real estate which William E. West received by this will. His witnesses valued it at about $10,000 and plaintiffs' at about $16,000. One thing was apparent, these buildings were often without tenants and one tenant Judge Bass testified that his bill as a carpenter amounted to as much as $48 a year for four years. The effort to show that the defendant William E. West received an undue proportion of his father's estate depended largely upon the value to be attached to this real estate.

In regard to the charge that he was the confidential adviser of his father, it is worthy of note that outside of the collection of the rents in Mexico there were no business transactions of moment in which the father was concerned, and he collected his own rents as a rule down to 1893, six years after this will was written. The father was a man of strong mind and great will power and not easily influenced by any one. Under these circumstances there was no presumption against the validity of

West v. West.

the devise by this father to his own child.   The fact that the son remained with his father and rendered him loyal, loving care and attention, as plaintiffs' own witnesses attest, does not create such a fiduciary relation as will cast upon him, without more cogent evidence than this record presents, the burden of accounting for any supposed inequality in his favor in his father's will. Indeed, when the various advances are considered much of this inequality disappears.   The other children all received at least three hundred and twenty acres of land, whereas William E. received only one hundred and twenty.   The other children received their lands long before the war and personalty to improve it, whereas this son's share was sold and the father used and enjoyed the proceeds and sought by his will to restore it to his son.  A wise provision was made for the widow and a considerable portion of his estate divided between his other children.   To F. M. West, $1,875; to his daughter Mrs. Mills, $2,000; and to F. M. West, Mrs. Wills and William E. the remainder in the homestead after his widow's death.

A careful examination of the record with a view to the errors assigned discloses that the issue of undue influence was submitted to the jury in a most favorable way for the plaintiffs, and the jury found that issue against them, and they have no ground for complaint.

It is exceedingly doubtful if there was enough substantial evidence to justify the court in giving the instructions it did for the plaintiffs, but certainly now that the jury under those instructions found against them, they present no case for reversal, and the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.