AUGUSTA G. RICE, BESSIE J. RICE, LIZZIE B. RICE v. MAUD NICHELS RICE AND MAUD NICHELS RICE, EXECUTOR OF ESTATE OF CHARLES ELBERT RICE.—197 S. W. (2d) 994.

Springfield Court of Appeals. November 18, 1946.

Rehearing Denied December 9, 1946.

740

*Eva L. Minor* and *James E. Sater* for appellants.

*D. S. Mayhew* for respondent.

VANDEVENTER, J.—This is an appeal from a judgment dismissing the petition in a will contest case.

The petition alleged that plaintiffs, (appellants here) were sisters of Charles Elbert Rice, who died May 9, 1943 in Barry County, Missouri. That the only heirs of the deceased were the plaintiffs and his widow, Maud Nichels Rice; that on the 17th day of May, 1943, Maud Nichels Rice offered for probate in the probate court of Barry County an instrument proporting to be the last will and testament of the deceased; that said instrument was duly probated and that said purported will bequeathed all the property of deceased to his wife, the defendant, and that the wife was named executrix of said will. Plaintiffs then allege that the instrument tendered to the probate court and probated as the last will and testament was not in fact the deceased's last will but that afterwards Charles E. Rice duly executed another will, revoking the former. The alleged later will was set out *en haec verba.*

The first paragraph, in the will pleaded, specifically stated that the maker revoked all former wills by him made. He then provided for the payment of his funeral expenses, that his wife Maud Nichels Rice would have such property as she was entitled to under the laws of the

State of Missouri at the time of his death, stating that deceased had already deeded to her 40 acres of land in Rogers County, Oklahoma. He then gave to Lucy E. Hupp, Lee Rice and John W. Rice the sum of $1.00 each. He devised and bequeathed to Augusta G. Rice, Bessie J. Rice, and Lizzie B. Rice, appellants here, share and share alike all of his real estate and personal property which he might own at the time of his death, subject to the above dispositions, to have and to hold absolutely and forever. He named Maud Nichels Rice as executrix. This instrument was dated the 9th day of April, 1940, was signed by Charles Elbert Rice and contained the customary provision that it was published and declared by the testator to be his last will in the presence of two witnesses who signed the same in his presence, and in the presence of each other at his request. The witnesses were Geraldean Bass and D. S. Mayhew. This petition was filed in the circuit court of Barry County on April 18, 1944, and within the year as provided by section 538 R. S. Mo. 1939.

Defendant filed the following motion to dismiss:

"Now on this day, come the defendants and withdraw their answer to plaintiffs' petition and file their motion as follows: stating to the court that the last purported named will in plaintiffs' petition has never been filed or alleged to be offered in the Probate Court of Barry County, Missouri, or approved or rejected by the Probate Court, and the record thereof made by the Probate Court, and this court has no jurisdiction of the subject matter purported to be contained in said last purported will to hear and to try said cause.

2.

"Defendants further state that notice of final settlement has been made and filed in the Probate Court and the estate closed and final settlement made thereof, and the executor discharged and the assets distributed in accordance with the original will, for the reason that this court had no original jurisdiction and the filing of this suit did not delay or prevent publication of a final settlement in said cause.

"Wherefore, Defendants move the court to dismiss said cause for want of jurisdiction."

This case was orally argued here and it was agreed in the argument, and also in the briefs filed by the respective parties, that there was only one question involved and that was, should the petition have stated that the second will had itself been presented to the probate court for probate?

Section 521, R. S. Mo. 1939, relating to the revocation of wills is as follows:

"No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, except by a subsequent will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction."

Section 525, R. S. Mo. 1939, relating to the revocation of a second will states:

"If, after making any will, the testator shall duly make and execute a second will, the destruction, canceling or revocation of any such second will shall not revive the first will, unless it appear, by the terms of such revocation, that it was his intention to revive and give effect to the first will, or unless he shall duly republish his first will."

The authority to contest the validity of a will is given in Section 538 R. S. Mo. 1939 and it provides:

"If any person interested in the probate of any will shall appear within one year after the date of the probate or rejection thereof, and, by petition to the circuit court of the county, contest the validity of the will, or pray to have a will proved which has been rejected, an issue shall be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court."

It will be noticed that by Section 521 a will may be revoked by a subsequent will in writing as well as by cancellation, burning, tearing or obliterating it. If a subsequent will is executed in writing, its revocation does not revive the first will unless by the revocation of the subsequent will it appear that it was the testator's intention to revive the former, or unless he re-publish the former. It must be borne in mind that the petition of contest in this case does not seek to establish the second will as the last will of the decedent, it merely alleges that the former will was revoked. It would be entirely conceivable that a man would make a will and after the lapse of time become dissatisfied with it and make another, expressly revoking the former and after the passage of more time, come to the conclusion that he would rather die intestate, and would then destroy the second will. The first will could have been misplaced or lost and discovered and produce after his death. Under these circumstances, if the contentions of respondent are correct, he could not die intestate because there could not be presented for probate the second will which had been destroyed.

We believe that if a second will specifically revokes the first, that that revocation becomes full and complete at the time of the proper execution of the second will whether the second will is ever probated or not. (Sec. 525, *supra*) If these conclusions are correct then it was not necessary to offer for probate the second will in order to show that the first will was revoked. These conclusions, we believe are sustained by the weight of authority and by the best reasoning.

We have been cited to no case in Missouri nor do we find any deciding the question here presented. We do find the following statement in Page on Wills, Lifetime Edition, Vol. 1, p. 824, Sec. 459:

"It is not necessary that the second instrument be probated in order that it may be used in the contest of the first will to show a revocation thereof. In jurisdictions in which the destruction of a later will con-

taining a clause of express revocation does not revive an earlier will, the later will may be shown for the purpose of effecting the revocation of the earlier will, even though such later will has been revoked, and accordingly can not be admitted to probate.''

In Blackett v. Ziegler, 153 Iowa 344, 133 N. W. 901, it was claimed that the execution of a second will revoked the former one and that this was true whether the latter was probated or not. The Supreme Court of Iowa so held saying:

''Upon the execution of such an instrument, the prior will is revoked, no matter whether the instrument of revocation be probated or not. It is the execution of the instrument in proper form which effectuates the revocation. This view is sustained by reason and the weight of authority although disapproved by a minority of the courts.''

In In re Cunningham 36 N. W. 269, 38 Minn. 169, evidence of a subsequent unprobated will executed in 1884 was offered to show the revocation of a probated will dated 1877. Objections were made because the will of 1884 had not been offered for probate. The Supreme Court of Minnesota said:

''In accordance with the weight of authority, and, as is considered by the majority of the court, with the better reason, we hold this evidence to have been competent in proof of an act of revocation. The testator might effectually revoke his former will by a writing so declaring, and executed as this instrument was executed (Chapter 47, Sec. 9, Gen. St. 1878) as he might also by other means. According to almost all of the authorities in Massachusetts, as well as elsewhere, such an instrument, its proper execution being shown, would be equally valid as a *revocation,* whether it might or might not (by reason of its contents being unprovable) be allowed as a will disposing of the estate. We are unable to recognize any reason for the rule that *such* an act of revocation is not competent *evidence* (upon the issue whether a prior instrument offered for probate was still in force as the testator's will at the time of his death) until, if it be capable of having effect as a will, it be first allowed as such in the probate court.''

In Barksdale v. Hopkins et al., 23 Georgia 332, the Court of Ordinary (the same as our Probate Court) had admitted a will dated 1848 to probate. Hopkins and others sought to show that this will had been revoked by a subsequent will execute in 1850. An appeal was taken to the Superior Court where the subsequent will was offered in evidence. Objection was made to its admission on the ground that it had not been offered for probate. The superior Court admitted the evidence and an appeal was taken to the Supreme Court. That court said:

''Upon the whole, then, we think, that if a will is presented for probate, and a second will is plead as a revocation of the first, the probate court may take notice of this second will, although that will may not have been admitted to probate, and although it may not be offered for

probate; and, consequently, that such Court may hear the proof touching the execution of the second will. Therefor, we think, that the Court was right in receiving the evidence of the subscribing witness to the will of 1850. . . . Suppose a man, having made a will, makes a second, in which, he says this: 'I hereby revoke my former will, and I do so, whether this, my present will, has effect or not, for it is my wish, that under no possible circumstances, shall that will stand, as, I would much rather die intestate, than die leaving such a will as that.' Now has the man the power to insert such a clause as this, in his second will? I suppose, that nobody will deny him the power." This case was affirmed.

In Puckett et al. v. Brittain 152 Okla. 184, 3 Pac. (2d) 876, a will executed in the year 1916 was admitted to probate. Its probate was contested by a nephew and heir at law of the deceased on the ground that it had been revoked by a later will executed in 1923. We quote from the opinion:

"J. V. Long, an attorney residing in Henryetta, on behalf of contestant, over objection of protestant, testified as follows: In the month of May, 1923, he drew a will for deceased in which he revoked all prior wills. The will was drawn at the request of deceased, and by him signed in the presence of Mrs. O'Dell and West Carter, who at his request, witnessed the execution of the will. The will was then delivered to the testator, who took it with him when he left the office. This evidence was objected to by petitioner on the ground that contestant had not offered that will for probate and that there was no sufficient proof its loss. The trial court at the time reserved its ruling to the objection, but at the conclusion of the witness' evidence sustained proponent's objection and excluded the evidence.

"Contestant also sought to prove by Mrs. O'Dell and West Carter, subscribing witnesses to the will, that it was executed by deceased in their presence and that they, at his request, witnessed the execution thereof, and that deceased stated to them that he had drawn a will and desired them to witness its execution. This evidence was also, upon objection of proponent, excluded. The court also excluded evidence offered by contestant that deceased had stated that he changed the 1916 will by the execution of a new will, and that the new will was kept by him in his safe at his place of business. Other evidence was also offered and excluded, which tended to show that the 1916 will had been revoked. In our opinion the court erred in excluding this evidence. It appears that it was excluded on the theory that such evidence was not admissible until and unless the new will was offered for probate. We do not think this theory correct.

"Section 11246, C. O. S. 1921, provides: 'If, after making a will, the testator duly makes and executes a subsequent will, the destruction, canceling or revocation of the latter does not revive the former, unless it appears by the terms of such revocation that it was his intention

to renew the former will, or unless after such destruction, canceling or revocation, he republishes the prior will.'

"Under this section of the statute, even though the will of 1923 had been canceled or destroyed by deceased, it would not have operated to reinstate the will of 1916, unless after such cancellation or destruction .deceased had republished that will. If the will of 1923 had been canceled or destroyed by deceased or by his request, it could not have been admitted to probate, but nevertheless, under the statute, such destruction or cancellation could not have operated to renew the prior will; therefore, evidence of the execution and loss thereof was admissible for the purpose of defeating probate of·the 1916 will."

As stated respondent contends that the second will should have been offered for probate before it was competent to show the revocation of the first will. In support of this contention, they cite numerous cases but as we view the cases, they do not pass upon the question here. Reliance is had upon the case of Breeding v. Pack et al. (Mo.), 164 S. W. (2d) 929. The opening sentence of that opinion is as follows: "This is an action seeking to declare void a will of Amanda Alberti dated February 12, 1938, and to establish a will alleged to have been executed by her March 22, 1939." The court held that when seeking to *establish* a will in the circuit court, it must have been first offered for probate in the probate court.

The facts in that case are not the facts before us. Appellants here are not seeking to *establish* the second will, they are merely contesting the one that was probated, alleging it was revoked by the second will. Whether the second will could be probated, whether it too had been revoked by destruction or otherwise, we do not know, and it is not material to the question presented here.

Callahan v. Huhlman, 98. S.. W. (2d) 704, 339 Mo. 634, cited by respondent, was a contest of a will and the petition alleges undue influence and lack of mental capacity. The evidence showed that the will was admitted to probate before the *judge* in vacation and was not confirmed by the probate court in term time and that no judgment of the *court* was rendered. The Supreme Court held that the order made by the judge was not a judgment of the probate court and consequently the circuit court had no jurisdiction to hear the contest.

Secion 3451 of Volume 7, Houts Pleading and Practice, is also cited, but that is a proposed form to contest a will that has been rejected by the probate court and in no way bears upon the question presented here—neither does the citation to that very estimable work on probate procedure by Rush H. Limbaugh (Vol. 2, Sec. 1144, P. 698). We take no issue with the statements of Mr. Limbaugh in Sec. 1144,. but no where does he settle the question here or cite authorities relating to it.

We agree with the cases. cited by respondent holding that the jurisdiction of the circuit court in will contests is derivative and in

the nature of an appeal from the probate court, that exclusive original jurisdiction is given by statute to the probate court, in the probate of wills, but as stated, the probate of the second will in this case is not sought. The circuit court had jurisdiction because the will that was being contested had been presented for probate. It is not a question here of the jurisdiction of the circuit court but a question of evidence, that is, whether the second will was properly admissible to show the revocation of the first. We think it was and if it is admissible in evidence, plaintiff's petition states a cause of action when it asserts that the first will was revoked and set out *en haec verba* the second will which shows upon its face a specific revocation of all prior wills and a disposition of testator's property so inconsistent with that of the former that there is also an implied revocation.

From what we have said it follows that the trial court erred in sustaining respondent's motion challenging the sufficiency of appellant's petition. The judgment of the trial court is reversed and remanded with directions to reinstate this case on the docket of that court for further proceedings consistent with this opinion. It is so ordered. *Fulbright, P. J.,* and *Blair, J.,* concur.