249 S.W.2d 389 (1952)
BROWNFIELD et al.
v.
BROWNFIELD.
No. 42713.
Supreme Court of Missouri, Division No. 2.
June 9, 1952.
Francis C. Flynn, St. Louis, Murtha J. Hackett, St. Louis, Lawson Romjue, Macon, H. K. West, Brookfield, for appellants.
C. B. Burns, Brookfield, Waldo Edwards, David Collins, Macon, for respondent.
TIPTON, Judge.
This is an action by the appellants, who are two nephews, a niece and a cousin of Mary Margaret Brownfield, deceased, to contest her will dated April 26, 1924. The trial court directed a verdict which declared this to be deceased's last will at the close of the evidence offered by appellants and entered a judgment establishing the instrument in writing dated April 26, 1924 as the last will and testament of deceased.
The sole contention raised in appellants' brief in this court is that the will dated April 26, 1924 had been revoked by a subsequent will executed by deceased which had been destroyed by the respondent, Dr. Samuel Tilden Brownfield, husband of the deceased.
The respondent and deceased had been residents of Brookfield, Missouri for many years. Deceased died December 7, 1946. Her sole heirs at law were her husband, *390 the respondent, and the appellants, Lawrence Edward Brownfield, Alonzo Brownfield and Virginia Brownfield Todt, and a first cousin Mayme Rose.
On December 11, 1946 the will dated April 26, 1924 was duly admitted to probate by the probate court of Linn County and respondent was appointed executor as provided by this will.
This will gave $500 each to her two nephews and her niece; it gave a tract of land in the city of Brookfield and all the remainder of her estate to her husband, the respondent. The will directed that her husband be appointed executor without bond. It was signed by testatrix. It had an attestation clause and was witnessed by J. Lane Evans and Louis K. Evans.
On the issue of whether this will of April 26, 1924 was revoked by a subsequent will, the evidence is as follows: Mrs. Kathryn Powell testified that she was employed by the respondent to take care of testatrix the summer before testatrix died; she stayed at the Brownfield home in the daytime but not at night; she was present when testatrix died and continued to keep house for respondent for about a year; a few days after the funeral, respondent asked her to go through testatrix' desk and look for some papers; the desk was so crammed with papers that it took her two or three days to clean it out. She was then asked, "* * * do you recall whether or not you came across a document thatone or more documents that appeared to be the last will and testament of the late Margaret Brownfield? A. Well, I found two wills.
"Q. Would you describe for the record just what you found? A. Well, the first one was in longhand, and then, I think the next day, I am notI just can't say for sure whether it was the same day or the next day, the next morning, when the Doctor was ready to go to work I found another one, it was typewritten; I said, `Doctor, this looks like a will here,' then he came and looked; he said `yes, yes, that is the last one, I'll take this for safekeeping,' and I never did see it any more; he took it with him."
The handwritten document was the will of April 26, 1924 and the typewritten document described by this witness is what the appellants contend is a subsequent will executed by deceased.
This witness further testified:
"Q. (By Mr. Flynn) Describe this second instrument you found? A. It was typewritten will and it was signed, I don't rememberby Mary Margaret Brownfield and I think J. Ray Evans' signature was on it, too."
The nephews and niece of the testatrix offered to testify that the testatrix had told each of them some time after the execution of the 1924 will that she had excuted a subsequent will leaving the property she had to the contestants and leaving her husband only what he was entitled to receive under the law as her widower. These offers of proof were denied by the trial court.
Respondent's deposition was read in evidence and he was asked if he knew about any other wills having been written after the will of 1924 and his answer was, "not a thing."
The above facts are all that relate to the issue of revocation of the 1924 will by a subsequent will. That is the only issue briefed by appellants, therefore, mental incompetence and undue influence as pleaded in appellants' petition have been abandoned. Crampton v. Osborn, 356 Mo. 125, 201 S.W.2d 336, 172 A.L.R. 344.
There is no dispute by the parties to this suit that the testatrix executed the handwritten will of April 26, 1924, but it is the appellants' contention that that will was revoked by a subsequent typewritten will which Mrs. Kathryn Powell says she gave to the respondent.
Under section 468.240, RSMo 1949, V.A.M.S., no will "shall be revoked, except by a subsequent will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction."
"To work a revocation by a subsequent will, it must be in writing, signed and attested as required by section *391 8870, because `every will' is required to be so executed by that section." West v. West, 144 Mo. 119, loc. cit. 129, 46 S.W. 139, loc. cit. 142.
Section 8870 referred to in that case is now section 468.150, RSMo 1949, V.A.M.S. It reads:
"Every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."
Compliance with this section is mandatory. Wright v. McDonald, 361 Mo. 1, 233 S.W.2d 19; Capps v. Adamson, Mo.Sup., 242 S.W.2d 556.
There is no evidence showing compliance with this section. The only witness who testified ever having seen the document that was a will or appeared to be a will was Mrs. Kathryn Powell. She testified that the testatrix had signed the will and also that J. Ray Evans' signature was on it. Of course, that evidence would not make the instrument a will because section 468.150, supra, requires that the will shall not only be signed by the testator but that it be attested by two competent witnesses who subscribe their names in the presence of the testator. There was no proof that the will even had an attestation clause. Because this witness called this document a will does not mean that it was a will in a legal sense.
The appellants cite 68 C.J. 990, sec. 757, in support of their contention that their evidence is sufficient for a jury issue. That section reads:
"Where a will is produced and propounded for probate, the burden is on one resisting the probate on the ground that such will has been revoked to prove the revocation, and in the absence of such proof revocation will not be presumed. Accordingly, one who asserts revocation by a subsequent will must prove the latter, and, if such subsequent will cannot be found, must show the same facts as if he were seeking its probate as a lost or destroyed will, and that its contents were so inconsistent with the former will as to revoke it, or that it contained an express clause of revocation. The fact that the will was found in an unusual place, or among worthless papers, or that it had apparently been abandoned among waste papers, does not raise a presumption that the testator intended to revoke it. Where it is claimed that a revocation of a will was procured by undue influence or at a time when the testator was incompetent, the burden is on the proponent to establish such contention." (Italics ours.)
This citation does not support appellants; in fact, it supports the trial court's ruling that there was no proof of a will subsequent to the will dated April 26, 1924.
The appellants assign as error the fact that the nephews and niece of testatrix were not permitted to testify to the fact that after the year 1924 the testatrix told each of them on various occasions that she had executed a subsequent will leaving to the respondent, her husband, only the property he would get by law and giving all the rest of her property to her next of kin.
Declarations of the testatrix which are not made in connection with some act of revocation and which are not part of the res gestae are inadmissible as proof of the facts asserted on the issue of revocation of a will. 57 Am.Jur. 384, sec. 562; 68 C.J. 1008, sec. 781; Wright v. McDonald, supra.
The appellants rely upon the case of Capps v. Adamson, supra, to show that these declarations of testatrix were admissible. That case held that after proof that the last will had been duly executed, then secondary evidence is admissible to prove the contents of a lost or destroyed will. But that case is no authority that the declarations of the testatrix are admissible to show the proper execution of a subsequent will.
The appellants also rely upon our case of McMurtrey v. Kopke, Mo.Sup., 250 S.W. 399, 402, where the issue was whether the *392 testator's last will had been lost or destroyed by the executor. The evidence in that case was that the testator had possession of the will but it could not be found after his death. This court held that under these circumstances there was a presumption that the decedent destroyed the will with the intent to revoke it. There was testimony to the effect that subsequent to the execution of the will in question the testator had made statements that the will was drawn exactly as he wanted it. In ruling such declarations admissible, we said, "By the great weight of authority the rule is firmly fixed that, where the formal execution of a will is shown, and such will shown to have been in the custody of the maker, but could not be found at his death, then the statements of the testator tending to show the continued existence of the will are competent to rebut the presumption of revocation occasioned by the failure to find the will at the death of testator."
That case does not rule the point before us but inferentially holds that the declaration of testator is not admissible to prove the execution of a will.
We think the trial court properly excluded the alleged declarations of the testatrix on the theory they would tend to prove the execution of the subsequent will in question.
Appellants contend that since Kathryn Powell testified that she gave the alleged will to respondent and he has not accounted for it, therefore, there is a presumption that it was duly executed. They rely upon the case of In re Campbell's Will, 100 Vt. 395, 138 A. 725, 54 A.L.R. 1369. In that case there was proof that there had been a will. The question to be decided was whether the will was destroyed at the direction of the testatrix during her lifetime or after her death. In ruling the case the Supreme Court of Vermont said 100 Vt. 395, 138 A. loc. cit. 728, 54 A.L.R. loc. cit. 1374:
"We are well satisfied that the rule is thus correctly stated, and therefore hold that the intentional but unlawful destruction of this will, if such it was, though done innocently and in good faith, gave rise to the so-called presumption of due execution. That such destruction was unlawful cannot be questioned. However much Mrs. Campbell may have desired to revoke her will, no matter how explicit directions she may have given, unless her desires were consummated and her directions carried out in her lifetime, they never lawfully could be."
The holdings in that case are contrary to our rulings in Wright v. McDonald, supra, and Capps v. Adamson, supra.
Moreover, that case is distinguishable from the case at bar. In that case there was no doubt that the testatrix had a will, while in the case at bar the only witness that testified there was a will subsequent to the will of April 26, 1924 was Kathryn Powell.
She testified that the paper she called a will bore the signatures of the deceased and J. Ray Evans when she was asked to describe the paper she stated was a will. As already stated, this evidence clearly shows that the paper she called a will was not a will.
When the only evidence shows that the purported will was not witnessed by two witnesses, then this document could not be a will under the provisions of section 468.150, supra. Of course, under these circumstances there is no room for presumption.
There was no evidence that would justify the trial court in submitting the question of whether the will of April 26, 1924 was revoked by a subsequent will.
It follows that the judgment of the trial court must be affirmed. It is so ordered.
All concur.