Benita L. YATES, John E. Jones, Mrs. Chester H. Crain, and Willard J. Walker, Plaintiffs-Appellants,

v.

James W. JEANS and Hazel Jeans, his wife, and James W. Jeans, Executor of the Estate of Clara Hood, deceased, Defendants-Respondents.

No. 7915.

Springfield Court of Appeals.

Missouri.

April 10, 1961.

**658** ■ 

A. H. Garner, Max Patten, Joplin, for appellant.

A. L. Shortridge, Joplin, for respondent.

McDOWELL, Judge.

This is an action by appellants, Benita L. Yates, John E. Jones, Mrs. Chester H. Crain and Willard J. Walker, nieces and nephews of Clara Hood, deceased, to contest her will dated November 15, 1952. The cause was tried before the court in Division I of Jasper County, Missouri, and, at the end of all of the evidence, judgment was entered establishing the instrument in writing dated November 15, 1952, as the last will and testament of the deceased.

The sole contention raised in appellants' brief is that the will dated November 15, 1952, had been revoked by a subsequent will executed by the deceased, which subsequent will has been destroyed.

Clara Hood died February 12, 1958. Her will dated November 15, 1952, was admitted to probate by the probate court of Jasper County, and respondent, James W. Jeans, was appointed executor, as provided by this will.

The will, after providing for the payment of all just debts and funeral expenses, devised and bequeathed to James W. Jeans and Hazel Jeans the residue and remainder of the estate of deceased, both real and personal, and requested the appointment of James W. Jeans as executor and asked he be permitted to act without bond.

The will was signed by testatrix, contained an attestation clause and was witnessed by Dalton DeShazer, Lois Shoemaker, and Paul L. Long.

The trial court, in a memorandum opinion, stated that plaintiffs allege that the deceased executed a new will in 1954 and that by reason of the new will, the 1952 will was revoked. That this is the only question involved in the case. He made this statement:

"There was testimony in the case to the effect that in 1954 Mr. Roy Coyne prepared a new will for the deceased and that it was properly executed and witnessed in his office. No copy of the 1954 will was introduced in evidence and there was no testimony of any kind concerning the contents of the 1954 will or whether or not that will had a clause revoking the prior will. Under such circumstances the mere fact that a new will was drawn in 1954 without proof of a revocation clause or of contents of the will which would be in conflict with the provisions of the will of 1952 there is not sufficient evidence to justify the Court in finding that the 1954 will revoked the 1952 will.

"The law seems to be well settled that a subsequent will does not revoke a prior will unless there is a revocation clause in the subsequent will or unless the terms of the subsequent will makes such a disposition of the property of the testatrix that that the two wills are inconsistent and the first must be considered revoked by reason of the inconsistent provisions."

On the issue of whether the will dated November 15, 1952, was revoked by a subsequent will, the evidence is as follows: Roy Coyne testified in behalf of plaintiffs that he is an attorney licensed to practice law in Joplin and has been for some years. He testified:

"Q. Now, Mr. Coyne, did you, during her lifetime, know Clara Hood? A. Yes, sir.

"Q. Did you at any time during her lifetime, as an attorney, draw a will up for her? A. Yes, sir.

"Q. Do you know when that was? A. It was sometime after May the first, 1954. It was after we moved to the new offices across the alley here, and it was after May 1954, the exact date of which I am unable to tell you.

"Q. Now, did you in your office, prepare this will for her? A. I did.

"Q. Was this will executed in your office? A. It was.

"Q. Did you see her sign this will that you prepared? A. I did.

"Q. And did you and anyone else or, if not you, who acted as witnesses for the will? A. Mary Hindman, my stenographer and myself acted as witnesses.

"Q. And after this will was executed in your office, did Clara Hood take it with her? A. Yes, sir, she put it in her pocket book and took it away with her.

"Q. Now, did you and Miss Hindman and Mrs. Hood all place your signatures on this document in the presence of each other? A. Yes, sir.

"Q. And did you and Miss Hindman sign the will at the request of Clara Hood as attesting witnesses? A. We did.

"Q. And did she at that time, tell you that that was her will? A. Yes, sir.

"Q. Do you know who was the beneficiary of that will? A. Well, it's been a long time and as my recollection goes now, a Mr. Kenrick or Kendall brought Mrs. Hood up to my office. I saw him here in the courtroom this morning and it's my recollection now that the will was made to him and his wife."

On cross examination witness testified that the will was a very short one and it was his recollection that after making the Kendalls beneficiaries, he was also made executor of the will. He stated that was all he remembered about the will except it was executed in his office.

Mary Hindman, legal secretary for Mr. Coyne, testified that Coyne moved his office to its present location in 1954; that she signed the will of deceased, Clara Hood, as a witness and that deceased took it with her when she left the office.

There was evidence offered that the deceased delivered the will in an envelope to another for safe keeping and that, later, she got the will back and took it to her home. It was not found in deceased's papers after her death.

In the trial of the case it was stipulated between the parties that the only issue involved was whether or not Mrs. Clara Hood, subsequent to November 15, 1952, made another will.

Appellants assign but one error on the part of the trial court, to-wit: the finding that the instrument in writing, dated November 15, 1952, which was admitted to

probate by the probate court, was the last will and testament of Clara Hood.

To support this alleged error appellants rely on sections 468.240 and 468.280 RSMo 1949; Beaumont v. Keim, 50 Mo. 28, and Rice v. Rice, 239 Mo.App. 739, 197 S.W.2d 994.

§ 468.240 RSMo 1949 [474.400 RSMo 1959] V.A.M.S., reads: "No will in writing, except in the cases herein mentioned, nor any part thereof, shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction."

§ 468.280 RSMo 1949 [474.410 RSMo 1959] V.A.M.S., reads: "If, after making any will, the testator duly makes a second will, the destruction, canceling or revocation of the second will does not revive the first will, unless it appears, by the terms of such revocation, that it was his intention to revive and give effect to the first will, or unless he duly republishes his first will."

Under the record presented in the instant case there is no issue raised under the law as set out in § 468.280. The sole issue is whether or not the will of Clara Hood, dated November 15, 1952, admitted to probate in Jasper County, was revoked by a subsequent will made in 1954, which has been lost or destroyed. Appellants here are not seeking to establish the second will. They are merely contesting the one that was probated, alleging that it was revoked by the second will.

Beaumont v. Keim, supra, relied upon by appellants, was an action to contest a will admitted to probate. The petition alleged, and the proof showed, that Mrs. Beaumont executed two wills, one in 1867 and the other in 1869, and that she destroyed the last will. The evidence was that each of the wills disposed of the entire estate but the disposition made by the one varied from that of the other. Therefore, the facts in this case differ from the facts in

the instant case and we think the authority does not support appellants' contention. However, the court does declare the law that the last will, not found at the place where it should have been, must be inferred to have been destroyed by testatrix.

Rice v. Rice, supra, relied upon by appellants, was decided by our court. The question decided was whether or not the second will was admissible in evidence to show revocation of the first will. The court stated on page 998 of the opinion in 197 S.W.2d:

"* * * We think it was and if it is admissible in evidence, plaintiff's petition states a cause of action when it asserts that the first will was revoked and sets out en haec verba the second will which shows upon its face a specific revocation of all prior wills and a disposition of testator's property so inconsistent with that of the former that there is also an implied revocation."

▮ The law declared in this case is the same as the law declared in the memorandum of the trial court in the instant case. The law governing the issue presented in the instant case is properly declared in Brownfield v. Brownfield, Mo. Sup., 249 S.W.2d 389, 391, 41 A.L.R.2d 387. The sole issue before the court was whether a will dated April 26, 1924, had been revoked by a subsequent will executed by deceased which had been destroyed. The court quoted, with approval, the law declared in 68 C.J. 990, § 757, which reads:

"'Where a will is produced and propounded for probate, the burden is on one resisting the probate on the ground that such will has been revoked to prove the revocation, and in the absence of such proof revocation will not be presumed. *Accordingly, one who asserts revocation by a subsequent will must prove the latter, and, if such subsequent will cannot be found, must show the same facts as if he were seeking its probate as a lost*

*or destroyed will, and that its contents were so inconsistent with the former will as to revoke it, or that it contained an express clause of revocation. \* \* \*'"*

In 95 C.J.S. Wills § 385, p. 280, this law is stated: "\* \* \* Accordingly, one who asserts revocation by a subsequent will must prove the subsequent will, its contents due execution, attestation, and that the testator was of sound mind at the time of executing the subsequent instrument. If such subsequent will cannot be found, he must show the same facts as if he were seeking its probate as a lost or destroyed will, and that its contents were so inconsistent with the former will as to revoke it, or that it contained an express clause of revocation; \* \* \*."

Under this alleged statement of the law is cited Brownfield v. Brownfield, Mo.Sup., 249 S.W.2d 389, 41 A.L.R.2d 387; Thomson v. Butler, 347 Mo. 269, 147 S.W.2d 437, 438.

In Vol. 2, Page on Wills, [Lifetime Edition] § 883, p. 740, the law is stated: "If it is sought to establish a lost will for the purpose of showing the revocation of a prior will, the same general problems arise as are presented in an attempt to probate a lost will for the purpose of giving effect to its dispositive provisions. The burden of proof is upon those who claim that such will revoked the prior will, to show that the lost will was executed in due form, and that its contents were such as to revoke the former will, by a revocation clause or by inconsistency with such will. \* \* \*"

The same rule of law, as set out in the above authorities, was declared in Capps v. Adamson, 362 Mo. 539, 242 S.W.2d 556; 57 Am.Jur., p. 375, § 544. These authorities fully state the law regarding the revocation of a will by a subsequent will as declared by the courts of Missouri.

■ In the instant case we think it is admitted by the parties that the subsequent will, relied upon by appellants, could not be found after deceased's death, and, under the law, it is presumed that the testator destroyed it with intent to revoke it. Peters v. Dodd, Mo.Sup., 328 S.W.2d 603; Maus, Missouri Practice, Probate Law and Practice, Volume 3, § 183, p. 170; Capps v. Adamson, supra; 57 Am.Jur., [Wills], § 492, p. 342. However, this question was not raised by the parties in their briefs.

■ The appellate court shall review the case upon both the law and the evidence as a suit in an equitable nature where the cause was tried by the court. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. § 510.310, subd. 4 RSMo 1959, V.A.M.S.; Fischman v. Kiphart, Mo.App., 297 S.W.2d 784 [1].

Appellants seem to be under the erroneous conception that under the law to show a will was revoked by a subsequent will all that was necessary was to prove the due execution of a second will. Appellants' attorney so stated in his argument to the court.

The law does not support this conception. Clearly, the proof must show not only that a second will was subsequently executed, but that it contained provisions either of express revocation of the first will or that the provisions of the will were inconsistent and thus revoked the former will by implication. The only testimony as to the provisions of the will, offered by appellants, was that of Attorney, Roy Coyne. He testified that he drew a will for the deceased in 1954, some two years after the date of the will probated in the probate court, and that he and his secretary signed as witnesses. He did not keep a copy of the will but stated that the deceased took the same with her. As to the contents of the will, Coyne testified that it was a very short will, and, when asked who the beneficiary of that will was, stated, "Well, it's been a long time and as my recollection goes now, a Mr.

Kendrick or Kendall brought Mrs. Hood up to my office. I saw him here in the courtroom this morning and it's my recollection now that the will was made to him and his wife."

The witness admitted that he had had a conversation with respondents' attorney and in that conversation had stated that some other person had brought Mrs. Hood to his office. Under the law, we cannot condemn the trial court's finding that the testimony was insufficient to establish a lost will which would revoke the will admitted to probate.

In McMurtrey v. Kopke, Mo.Sup., 250 S.W. 399, 400 [1], the Supreme Court stated: "In a suit to establish a lost will, the burden of proof is upon the proponents to show the due execution of the will in accordance with the statutes of the state covering the making of wills. * * *

"The foregoing rule requires the showing of a mental capacity to make a will, as well as legal age. In this the rule is not different from the one governing the establishment of an existing will. By existing will we mean one which has a physical and known existence at the time its probate or establishment is sought. * * *"

We find that appellants failed in their burden of proof to establish a subsequent will, the contents of which were so inconsistent with the terms of the will probated as to revoke the same by implication.

Having found for respondents it is unnecessary to pass upon the contentions raised in respondents' brief.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.